# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ESTHER GRACE SIMMONS,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Civil Action No. 05-1828 (RCL)** |
| | **)** | |
| **CHRISTOPHER COX,** | **)** | |
| **as and in his capacity as** | **)** | |
| **CHAIRMAN OF THE SECURITIES** | **)** | |
| **AND EXCHANGE COMMISSION,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Christopher Cox, Chairman of the Securities and Exchange Commission

(SEC), by and through undersigned counsel, respectfully moves for summary judgment in favor

of the Defendant, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any

material fact and Defendant is entitled to judgment as a matter of law. In support of this motion,

Defendant relies on the attached statement of material facts as to which there is no genuine

dispute and memorandum of points and authorities in support of this Motion.   A proposed order

is submitted herewith.

Respectfully submitted,

/s/

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334


Of Counsel:

DAVID M. PINANSKY
Senior Special Counsel,
Securities and Exchange Commission

Attorneys for the Defendant

# UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ESTHER GRACE SIMMONS,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **V.** | :     **CASE NUMBER:   05 -1828** |
| | : |
| **CHRISTOPHER COX,** | :     **JUDGE: Royce C. Lamberth** |
| **as and in his capacity as** | : |
| **CHAIRMAN OF THE SECURITIES** | : |
| **AND EXCHANGE COMMISSION,** | : |
| | : |
| **Defendant.** | : |

## <u>DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>

1.      The SEC is an independent federal regulatory agency created in 1934 under the

Securities Exchange Act of 1934.  <u>See</u> <u>generally</u> 15 U.S.C. § 78a; 17 C.F.R. §§ 200.1, 200.2.

2.      The primary mission of the Agency is to administer and enforce the federal securities

laws.  <u>Id.</u>

2.      Plaintiff was hired by the SEC in 1988 as a GS-4 Clerk Typist.  Compl. at ¶ 1.

3.      Over her years at the SEC, plaintiff was promoted, and by April 1997, plaintiff was a GS-

7, Securities Compliance Technician in the Office of Compliance Inspections and Examinations.

Declaration of Nicole R. Woodard, attached as Ex. 1 ("Woodard Decl.") at ¶ 4; Compl. at ¶ 11.

4.      In 2000, new GS-9 paralegal positions were posted in the Division of Corporation

Finance ("Corp Fin") Office of EDGAR and Information Analysis ("EDGAR Office").

Declaration of Herbert Scholl, attached as Ex. 2 ("Scholl Decl.") at ¶ 4; Deposition of Herbert

Scholl dated November 15, 2006, and attached as Ex. 3 ("Scholl Dep.") at 32; EEO Report of

Investigation Testimony of Herbert Scholl ("Scholl ROI Test.") attached as Ex. 4 at 10-11; Bates

#SEC 2314-15.

5.      Plaintiff applied for one of the paralegal positions and was interviewed by Herbert Scholl ("Scholl").  Id.  It was Scholl who selected plaintiff for one of the paralegal positions.  Scholl Decl. at ¶ 9; Merit Promotion Certificate and Decision by Selecting Official attached as Ex. 5; Bates #SEC 13-14.

6.      At the same time Scholl selected plaintiff, Scholl selected two other African-American female paralegal specialists (Karlene Reid and Cynthia Brooks).  Final Agency Decision attached as Ex. 6 at 13, Bates #SEC 2106; Scholl ROI Test. at 16-17; Deposition of Esther Grace Simmons dated November 10, 2006 attached as Ex. 7 ("Pl. Dep.") at 94; Declaration of David M. Pinansky ("Pinansky Decl.") and attached as Ex. 44.

7.      Scholl supervised the plaintiff as well as Reid and Brooks. He eventually promoted Reid and Brooks to a grade 11.  Reid and Brooks are still employed at the SEC.  Scholl ROI Test. at 8.

8.      Plaintiff's duties in the EDGAR Office primarily involved Freedom of Information Act ("FOIA") requests.  Testimony of Herbert Scholl at Arbitration Hearing of January 7-6, 2004, Arbitration Transcript attached as Ex. 8; ("Arb. Tr.") at 94-95; Bates #SEC 1691-92; Pinansky Decl. at ¶6.[1]

9.      Plaintiff's FOIA work was reviewed by a senior member of the EDGAR staff, Mr. Richard Landy.  Arb. Tr. at 138; Bates #SEC 1735; Scholl ROI Test. at 20-21; Bates #SEC 2324-25.

---

[1]  The citations to the Pinansky declaration are primarily to authenticate the documents attached to this motion as exhibits pursuant to Fed. R. Civ. P. 56(e).  Pinansky declaration refers to exhibits 6, 7, 8, 19, 20, 37, 39, 42 and 43.  The Scholl declaration refers to and authenticates exhibits 3, 4, 5, 10, 11, 12, 13 - 16, 17, 18, 31, 32, and 38.  The Daly declaration refers to and authenticates exhibits 22 and 32.  The Halpin declaration refers to and authenticates exhibits 21 and 36.  The Lewis declaration refers to and authenticates exhibits 34, 35 and 40.

10.    Plaintiff also helped process confidential treatment requests ("CTRs").  Arb. Tr. at 92-98; Bates #SEC 1689-95; Attachment to PIP I, Bates #SEC 1239-43; Attachment to PIP II,  Bates #SEC 868-72.

11.    When companies file with the SEC, they sometimes want to keep certain information confidential in otherwise public filings.  They make an application to keep the information non-public.  Id.  Plaintiff was responsible for reviewing the CTR against a checklist to see whether it meets the criteria for an immediate grant of confidential treatment.  Id.

12.    Mr. Jacob Fien-Helfman ("Fien-Helfman") was plaintiff's reviewer for the CTRs.  Id.

13.    Scholl rated plaintiff  "pass" in her performance evaluation for the period August 27, 2000 to April 30, 2001.  Performance Evaluation for the Period August 27, 2000 to April 30, 2001 attached as Ex. 12, Bates #SEC 171-77; Scholl Decl. at ¶14.

14.    Scholl, however, stated in the evaluation that plaintiff's performance needed improvement.  Id.

15.    During the period from May 2001 to April 2002, Scholl received complaints about plaintiff's work from Landy and Fien-Helfman, the primary reviewers of plaintiff's work.  E-mails from Richard Landy and Jake Fien-Helfman attached as Exs. 13-16, Bates #210-211, 216-18; Scholl Decl. at ¶ 15.

16.    Based on that feedback and Scholl's own observations in July 2002, Scholl rated plaintiff "fail" for the period from May 2001 to April 2002.  Performance Evaluation for the Period May 1, 2001 to April 30, 2002 attached as Ex. 17, Bates #164-70.

17.    Plaintiff failed the technical proficiency, analytical ability, and communications skills critical elements.  Id.

18.     On October 1, 2002, Scholl gave plaintiff a performance improvement plan ("PIP I"). Compl. at ¶ 34; Ex. 10, Bates #SEC 1333-43.

19.     The PIP I identified the areas where plaintiff was unsuccessful and provided her with 90 days to improve her performance in the three critical elements that she was rated "fail" in July 2002. Id.

20.     During the 90-day PIP I period, plaintiff's work was primarily reviewed by Scholl. Arb. Tr. at 138.

21.     Scholl found plaintiff's performance unacceptable during the PIP I period because she failed to improve in technical proficiency, analytical ability, and communication skills. Scholl Decl. at ¶ 19; Arb. Tr. at 141-200, Bates Nos. SEC 1738-98.

22.     In an e-mail to Scholl dated July 1, 2003, Landy stated "Yesterday I sent you a copy of my E-mail message to Grace about her two IM [Investment Management] FOIA requests. I gave her the two sentences she had to include in her memos. I thought she would cut and paste them into her memos. Well. Herb, it her [sic] took her three tries." Ex. 18, Bates #SEC 1083; Scholl Decl. at ¶ 20.

23.     Effective July 27, 2003, Plaintiff was demoted to SK-7. The demotion letter was dated October 19, 2003, and stated inter alia that the demotion was because of unsuccessful performance as a grade 9. Compl. at ¶ 48; Form 50 Effective October 19, 2003 and Decision on Proposed Reduction in Grade attached as Ex. 19, Bates #SEC 47-51; Pinansky Decl. at 7.

24.     Plaintiff filed a union grievance over the demotion, which went to arbitration. Compl. at ¶ 51; Arb. Tr.; Declaration of Eileen Halpin, attached as Ex. 9 ("Halpin Decl.") at ¶ 4.

25.     The arbitrator upheld the demotion. Compl. at ¶ 52; Arbitrator's Award dated March 19,

2004, attached as Ex. 20, Bates Nos. SEC 1490-504; Pinansky Decl. at ¶ 8.

26.     Neither plaintiff nor the union raised a discrimination claim.  Arb. Tr.; Halpin Decl. at ¶ 9; Grievance dated August 28, 2002 attached as Ex. 21, Bates #SEC 320-23.

27.     In a Memorandum to Alan Beller dated April 3, 2003, Plaintiff describes her issues with Scholl as a "personality conflict." Memorandum to Allen Beller attached as Ex. 22, Bates #SEC 629 .  Declaration of James Daly, attached as Ex. 33 ("Daly Decl.") at ¶ 4.

28.     After the demotion occurred, plaintiff was not given any of the more complicated FOIA requests nor was she given CTRs to process.  Scholl ROI Test. at 12, Bates #SEC 2316; see Scholl Dep. at 184-87; Scholl Decl. at ¶ 21; E-mails from Landy attached as Exs. 23-24, SEC Bates #SEC 908, 925.

29.     Plaintiff continued to perform poorly.  E-mails from Fien-Helfman and Landy attached as Exs. 18, 23, 25-30, Bates #SEC 687-92, 908-09, 946, 1061, 1083.

30.     On February 23, 2004, Scholl spoke to plaintiff about her performance and set goals for her to improve.  See Attachment A to PIP II, Ex. 11, Bates #SEC 716.

31.     On June 3, 2004, Scholl gave plaintiff an "unacceptable" performance evaluation for the period ending April 30, 2004, finding her performance unacceptable in the areas of knowledge of field or occupation, execution of duties, and communications.  Scholl Decl. at ¶ 24; Performance Evaluation attached as Ex. 31, Bates #SEC 2564-65.

32.     On June 24, 2004, Scholl gave plaintiff PIP II with numerous examples of errors that plaintiff had made attached thereto.  Plaintiff was given 60 days to improve her performance. Compl. at ¶ 58; PIP II attached as Ex. 11; Bates #SEC 710-872.

33.     As part of the PIP II, Plaintiff was instructed to:

1.      Significantly reduce the number of inconsistencies, unnecessary or incorrect references and typographical or similar errors from your memoranda.

2.      Demonstrate a better understanding of the confidential treatment, FOIA and related SEC rules in your oral and written presentations.

3.      Demonstrate a better understanding of Division, FOIA, and confidential treatment policies.

4.      Follow Division procedures in retrieving information, dealing with the staff and outsiders, preparing memoranda, orders, and letters and in providing the detail necessary to evaluate issues raised by the FOIA or confidential treatment requests assigned to you for processing.

Id. at 5; Bates #SEC 714.

34.     Plaintiff's work did not improve during the PIP II 60-day improvement period.  Scholl ROI Test. at 12-16; Bates #SEC 2315-20; Notice of Proposed Removal for Unsuccessful Performance attached as Ex. 32, Bates #SEC 588-663.

35.     In addition to making many mistakes, plaintiff failed to comply with specific requests from her supervisors. Exs. 25, 27, Bates #SEC 688, 690.

36.     On November 1, 2004, James M. Daly, Associate Director, proposed plaintiff's removal for unsuccessful performance and identified thirteen different items evidencing plaintiff's failure to improve her performance. Daly Decl. at ¶5; Ex. 32; Bates #SEC 588-663.

37.     On the same day that Daly proposed plaintiff's removal, November 1, 2004, Valerie Lewis became a branch chief in the Edgar office and plaintiff's first-line supervisor.  Scholl ROI Test at 8, Bates #SEC 2312; EEO Report of Investigation testimony of Valerie Lewis attached as Ex. 34 ("Lewis ROI Test.") at 6-7; Bates #SEC 2369-70; Declaration of Valerie Lewis, attached as Ex. 41 ("Lewis Decl.") at ¶ 4.

38.     Plaintiff provided a written response to the proposal to Alan Beller ("Beller"), the

7

deciding official, along with 35 separate attachments on November 23, 2004. Plaintiff's

Response to Proposed Removal attached as Ex. 36; Bates #SEC 280-461; Halpin Decl. at ¶ 7.

39.    After carefully considering the material forming the basis of the proposal and full

consideration of the materials provided by plaintiff, in her reply, Beller found that the

unsuccessful performance identified in the proposal was supported by substantial evidence and

decided to remove plaintiff from her position with the SEC. Ex. 37, Bates #SEC 2-5.

40.    Plaintiff's employment at the SEC ended on February 11, 2005. Compl. at ¶ 70; Ex. 37;

Bates #SEC 42.

41.    On October 24, 2004, prior to plaintiff's proposed removal, Scholl was contacted by

telephone by Cheryl Dixon from the Washington, D.C., Superior Court. Scholl ROI Test. at 48-

52; Scholl Dep. at 238-48; Post-it Note of Conversation with Dixon attached as Ex. 38, Bates

#SEC 2409; Scholl Decl. at ¶ 27.

42.    Dixon asked Scholl to respond to a number of questions regarding plaintiff. Dixon asked

that responses be provided in terms of a number from one to ten, with ten being the highest

possible rating. Id.

43.    Scholl told Dixon that he believed to earn a high rating of nine or ten, the person had to

"walk on water." Id.

44.    He also told Dixon that plaintiff strongly disagreed with his evaluation of her work and

that Dixon needed to consider this fact when weighing his responses. Id.

45.    Scholl responded to the questions by telling Dixon he would give plaintiff sixes and

sevens on matters related to plaintiff's work habits and twos and threes on the quality of her

work and her ability to adapt to a new work environment and new procedures. Id.

8

46.    Plaintiff admits that she got a second interview after Scholl spoke to Dixon, and in that interview she admitted she was having problems with Scholl.  Report of Investigation Testimony of Esther Grace Simmons dated June 14, 2005, attached as Ex. 39 ("Pl. ROI Test.") at 53, Bates #SEC 2261; Pinansky Decl. at ¶10.

47.    Lewis provided a written reference for plaintiff dated November 23, 2004 (less than a month after she became plaintiff's supervisor).  General Reference Letter from Lewis attached as Ex. 40; Bates #SEC 2411; Lewis Decl. at ¶ 7.

48.    Lewis was also contacted by someone from the D.C. Superior court in December 2004.  Lewis Dep. at 35.

49.    She responded by saying that plaintiff worked adequately at grade 7, reported to work timely, and that she would hire her again.  Id.

50.    Plaintiff admits that Home Depot would not tell her to whom they spoke at the SEC or what was said.  Pl. ROI Test. at 55-56.

51.    Scholl and Lewis were contacted only by the D.C. Superior court and had no contact with any other prospective employer of plaintiff.  Lewis Dep. at 24-25; Scholl Dep. at 246.

52.    Plaintiff has not identified anyone else whom Home Depot may have contacted at the SEC.  Pl. Dep. at 40-65.

53.    Plaintiff first contacted the SEC's EEO office on March 4, 2005 and was interviewed by an EEO counselor on March 7, 2005.  EEO Counselor's Report attached as Ex. 42, ROI at Tab B, Bates #SEC 2130; Pinansky Decl. at ¶11.

54.    On April 6, 2005, by letter from her counsel, plaintiff filed her formal EEO complaint with the SEC's EEO office alleging discrimination on the basis of race, sex, and retaliation.

Letter from Maria Bremis dated April 6, 2005 attached as Ex. 43, ROI at Tab A; Bates #SEC 2119-27.

55.     A final agency decision ("FAD") was issued on August 12, 2005. Ex. 6; Bates #SEC 2084-111.

56.     The FAD concluded that "neither the [plaintiff] nor the investigation disclosed any evidence to suggest that the SEC's stated reasons for its actions were a pretext for discrimination."  FAD at 18; Bates #SEC 2111.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334


Of Counsel:

DAVID M. PINANSKY
Senior Special Counsel,
Securities and Exchange Commission

UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ESTHER GRACE SIMMONS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | CASE NUMBER:  1:05CV01828 |
| | : | |
| CHRISTOPHER COX, | : | JUDGE: Royce C. Lamberth |
| as and in his capacity as | : | |
| CHAIRMAN OF THE | : | |
| SECURITIES AND EXCHANGE | : | |
| COMMISSION, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Esther Grace Simmons was employed at the U.S. Securities and Exchange

Commission ("SEC") from December 4, 1988 until her removal effective February 11, 2005.

Compl. at ¶¶ 1, 70.  She has brought a complaint alleging race and sex discrimination and

retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Plaintiff

claims that in removing her, the SEC discriminated against her because of her race (African-

American) and gender (female) and in retaliation for prior protected activities in opposing

discrimination in the workplace.  After ample discovery, however, plaintiff has marshaled no

evidence that unlawful factors played any part in her removal or in relation to her attempts to

find other employment.

As demonstrated below, and as demonstrated in the Rule 7(h) Statement of Material

Facts Not in Dispute accompanying defendant's Motion for Summary Judgment, there is no

genuine issue as to any material fact on any of plaintiff's claims.  See Fed. R. Civ. P. 56.

Defendant therefore respectfully requests that judgment for defendant be entered as a matter of

law and that this matter be dismissed with prejudice.

## I. FACTS

### A.    Plaintiff's Employment at the SEC

The SEC is an independent federal regulatory agency created in 1934 under the

Securities Exchange Act of 1934.  The primary mission of the Agency is to administer and

enforce the federal securities laws.  See generally 15 U.S.C. § 78a; 17 C.F.R. §§ 200.1, 200.2.

Plaintiff was hired by the SEC in 1988 as a GS-4 Clerk Typist.  Compl. at ¶ 1.  Over her

years at the SEC, plaintiff was promoted, and by April 1997, plaintiff was a GS-7, Securities

Compliance Technician in Office of Compliance Inspections and Examinations.  Declaration of

Nicole R. Woodard dated February 16, 2007 and attached as Ex. 1 ("Woodard Decl.") at ¶ 4;

Compl. at ¶ 11.

In 2000, new GS-9 paralegal positions were posted in the Division of Corporation

Finance ("Corp Fin") Office of EDGAR and Information Analysis ("EDGAR Office")[2].  Plaintiff

applied for one of the positions.  She was interviewed by Herbert Scholl ("Scholl").  Declaration

of Herbert Scholl dated February 16, 2007, and attached as Ex. 2 ("Scholl Decl.") at ¶¶ 4, 7-8;

Deposition of Herbert Scholl dated November 15, 2006, and attached as Ex. 3 ("Scholl Dep.") at

32; EEO Report of Investigation Testimony of Herbert Scholl ("Scholl ROI Test / Ex 4.")

attached as Ex.4 at 10-11.  Scholl selected plaintiff for one of the paralegal positions.  Scholl

---

[2]  The EDGAR Office is within "Corp. Fin."

Decl. at ¶ 9; Merit Promotion Certificate and Decision by Selecting Official attached as Ex.5.
Scholl became plaintiff's first level supervisor. Scholl ROI Test., Ex.4 at 8.

At the same time Scholl selected plaintiff, Scholl selected two other African-American
female paralegal specialists (Karlene Reid and Cynthia Brooks). Scholl supervised both Reid
and Brooks, and eventually promoted them to grade 11. They are still employed at the SEC.
Final Agency Decision (FAD) attached as Ex. 6 at 13, Bates #SEC 2106; Ex. 4 at 16-17;
Deposition of Esther Grace Simmons dated November 10, 2006 ("Pl. Dep."), Ex. 7 at 94. No
other paralegal specialists worked in the EDGAR Office. Scholl Decl., Ex. 2 at ¶ 11.

Plaintiff's duties in the EDGAR Office primarily involved Freedom of Information Act
("FOIA") requests. FOIA requests that come to the Agency are processed in a separate FOIA
office outside of Corp Fin. When the FOIA office is unable to immediately obtain the requested
information that is maintained by Corp Fin, it sends the request to the EDGAR Office. The
EDGAR Office then looks for the information, puts it together, and sends the information to the
FOIA office for further processing. Testimony of Herbert Scholl at Grievance Arbitration
Hearing of January 7-6, 2004, Arbitration Transcript attached as Ex. 8 at 94-95.

Plaintiff was responsible for retrieving the requested information. She would then
prepare a memorandum to be sent to the FOIA office along with the information. Each FOIA
application is unique. She was required to read and understand what was being asked for in each
FOIA request. Ex. 8 at 92-98; Attachment to Notice and Opportunity to Improve Performance
dated October 1, 2002 ("PIP I") attached as Ex.10; Attachment to Notice and Opportunity to
Improve Performance dated June 24, 2004 ("PIP II") attached as Ex.11.

Plaintiff's FOIA work was reviewed by a senior member of the EDGAR staff. The

4

primary reviewer was Mr. Richard Landy ("Landy"). However, as discussed further below, Scholl placed plaintiff on a performance improvement plan two times, and while she was on the performance improvement plans, Scholl was her primary reviewer. Ex. 8 at 138; Ex. 4 at 20-21.

Plaintiff also helped process confidential treatment requests ("CTRs"). When companies file with the SEC, they sometimes want to keep certain information confidential in otherwise public filings. They make an application to keep the information non-public. The EDGAR Office is responsible for about 1200 CTRs each year. The applications are processed based on the requirements under FOIA. A checklist is used to review each CTR. Ex. 4 at 92-98; Attachment to PIP I, Ex. 10; Bates # SEC 1239-43; Attachment to PIP II, Ex. 11; Bates # SEC 868-72.

Plaintiff was responsible for reviewing the CTR against a checklist to see whether it meets the criteria for an immediate grant of confidential treatment. If not, the CTR is brought to the reviewer's attention. Mr. Jacob Fien-Helfman ("Fien-Helfman") was Grievant's reviewer for the CTRs. Id.

Scholl rated plaintiff "pass" in her performance evaluation for the period August 27, 2000 to April 30, 2001 (her first eight months in her position). Scholl, however, stated in the evaluation that plaintiff's performance needed improvement.

**AREAS FOR IMPROVEMENT:**

Ms. Simmons' transition from a clerical to a paralegal position is not complete. She needs to approach her work in a more business like manner and improve her inter-personal and communication skills. Ms. Simmons also must improve her examination skills by focusing on fundamentals such as ensuring her work product reflects thorough and thoughtful analysis and an attention to detail. In this regard, she should seek to expand her knowledge of business and corporate finance. Ms. Simmons needs to continue to

> increase her familiarity with Division operations and procedures
> and her productivity consistent with the experience she is gaining.

Performance Evaluation for the Period August 27, 2000 to April 30, 2001 attached as Ex.12**;**

Bates #SEC 171-77; Scholl Decl. at ¶ 14.

Plaintiff continued to have problems with her performance. Scholl received complaints

about plaintiff's work from Landy and Fien-Helfman, the primary reviewers of plaintiff's work.

E-mails from Richard Landy and Jake Fien-Helfman attached as Exs.13-16, Bates #210-211,

216-18; Scholl Decl. at ¶16. Based on that feedback and Scholl's own observations in July

2002, Scholl rated plaintiff "fail" for the period from March 2001 to April 2002. Performance

Evaluation for the Period May 1, 2001 to April 30, 2002 attached as Ex. 17; Bates #164-70.

Plaintiff failed the technical proficiency, analytical ability, and communications skills critical

elements. Id.

On October 1, 2002, Scholl gave plaintiff a performance improvement plan ("PIP I").

Compl. at ¶ 34; Ex. 10; Bates #SEC 1333-43. PIP I identified the areas where plaintiff was

unsuccessful and provided her with 90 days to improve her performance in the three critical

elements that she was rated "fail" in July 2002. Id. During the 90-day PIP I period, plaintiff's

work was primarily reviewed by Scholl. Ex. 8 at 138. Scholl found plaintiff's performance

unacceptable during the PIP I period because she failed to improve in technical proficiency,

analytical ability, and communication skills. Scholl Decl. at ¶ 19; Ex. 8 at 141-200, Bates Nos.

SEC 1738-98. After the PIP I period, Landy still saw problems with plaintiff's work. In an e-

mail to Scholl dated July 1, 2003, Landy stated "Yesterday I sent you a copy of my E-mail

message to Grace about her two IM [Investment Management] FOIA requests. I gave her the

two sentences she had to include in her memos. I thought she would cut and paste them into her

memos. Well. Herb, it her [sic] took her three tries." Ex.18, Bates #SEC 1083.

Plaintiff was demoted to GS-7 on October 19, 2003, because of unsuccessful performance as a grade 9.[3] Compl. at ¶ 48; Form 50 Effective October 19, 2003 and Decision on Proposed Reduction in Grade attached as Ex.19; Bates #SEC 47-51. Plaintiff filed a union grievance over the demotion, which went to arbitration. Compl. at ¶ 51; Ex. 8; Ex. 21 ; Declaration of Eileen Halpin ("Halpin Decl.") at ¶ 6. At the arbitration hearing regarding plaintiff's demotion Landy testified:

> On a personal level, Grace and I are friends. I like Grace. We talk about Grace's family. She's a nice person. Her work, though, was not successful. In the end, that's the thing I've just sworn to tell the truth in . . . And my judgment, which really comes from 30 years of seeing other people's work; she never did work at the GS-9 level. She'd [sic] didn't work at the GS-7 level. I don't wish to hurt Grace, but not everybody can do all the jobs. She never caught on to this work at the GS-9 level or the GS-7 level, the GS-5 level.

Ex.8 at 24, 30, Bates #SEC 1621,1627. The arbitrator upheld the demotion. Compl. at ¶ 52; Arbitrator's Award dated March 19, 2004, attached as Ex.20; Bates Nos. SEC 1490-504. Neither plaintiff nor the union raised a discrimination claim. Ex. 8; Halpin Decl. at ¶ 5; Grievance dated August 28, 2002 attached as Ex. 21, Bates #SEC 320-23; Memorandum to Alan Beller dated April 3, 2003 attached as Ex. 22, Bates #SEC 629 (Plaintiff describes her issues with Scholl as a "personality conflict.").

After "the demotion occurred, [plaintiff] was not given any of the more complicated requests." Ex. 4 at 12, Bates #SEC 2316; see Scholl Dep. at 184-87; Scholl Decl. at ¶ 21; E-mails from Landy attached as Exs.23, 24 , SEC Bates #SEC 908, 925. Landy explained the

---

[3] Although the Decision on Proposed Reduction in Grade stated that the demotion would be effective July 27, 2003, the actual date of the demotion was October 19, 2003.

difference between work at the GS-9 level and the GS-7 level in an e-mail to Scholl.

> You asked me to assign GS-7 level FOIA requests to Grace. I
> assigned her work this morning . . . At the GS-7 level, none of the
> FOIA requests I have assigned her appear to be difficult and, in my
> judgment, all of them can be done in about an hour unless she runs
> into problems finding the material.

E-mail of Landy to Scholl dated January 20, 2004, attached as Ex.24, Bates #SEC 925. Fien-

Helfman also gave plaintiff simple tasks, as he stated in an e-mail to plaintiff:

> On July 27th, I gave you the exact wording of a letter I wanted to
> go out to Exact Sciences. As I have told you repeatedly, all you
> need to do is cut the letter from my July 27th e-mail to you and
> paste it on letterhead using Microsoft word. To make it even
> easier for you, I am now sending the July 27th draft as an
> attachment.

E-mail of Fien-Helfman dated August 3, 2004, attached as Ex.25, Bates #SEC 688. Despite the

fact that plaintiff was not given complicated work, plaintiff continued to perform poorly. E-

mails from Fien-Helfman and Landy attached as Exs.26 - 30, Bates #SEC 687-92, 909, 946,

1061. In February 2004, Landy told Scholl, "I gave Jamellia 34 requests to assign to Grace in

the FOIA database. Ten requests are due this week and twelve requests are due next week and

the following week. My experience is that she will take longer than three weeks to complete the

requests." E-mail from Landy to Scholl dated February 17, 2004, attached as Ex.23, Bates #SEC

909. Landy was referring to the type of request he previously had said could be completed in

one hour. On February 23, 2004, Scholl spoke to plaintiff about her performance and set goals

for her to improve. See Attachment A to PIP II, Ex. 11, Bates #SEC 716.

Because plaintiff's work as a grade 7 paralegal specialist was not satisfactory, on June 3,

2004, Scholl gave plaintiff an "unacceptable" performance evaluation for the period ending

April 30, 2004, finding her performance unacceptable in the areas of knowledge of field or

occupation, execution of duties, and communications.  Scholl Decl. at ¶ 23 - 24; Performance

Evaluation, Ex 31.

On June 24, 2004, Scholl gave plaintiff PIP II with numerous examples of errors that

plaintiff had made attached thereto.  Compl. at ¶ 58; PIP II attached as Ex.11; Bates #SEC 710-

872.  PIP II provided plaintiff 60 days to improve her performance.  Id.  Plaintiff was instructed

to:

- Significantly reduce the number of inconsistencies, unnecessary or incorrect references and typographical or similar errors from your memoranda.

- Demonstrate a better understanding of the confidential treatment, FOIA and related SEC rules in your oral and written presentations.

- Demonstrate a better understanding of Division, FOIA, and confidential treatment policies.

- Follow Division procedures in retrieving information, dealing with the staff and outsiders, preparing memoranda, orders, and letters and in providing the detail necessary to evaluate issues raised by the FOIA or confidential treatment requests assigned to you for processing.

Ex. 11 at 5; Bates #SEC 714.  Furthermore, Attachment Q to PIP II explicitly outlined the

procedures plaintiff was to follow when handling FOIA applications and CTRs.  Ex.11; Bates

#SEC 867-72.

Plaintiff's work did not improve during the PIP II 60-day improvement period.  Scholl

ROI Test. at 12-16; Bates #SEC 2315-20; Notice of Proposed Removal for Unsuccessful

Performance attached as Ex.32; Bates #SEC 588-663.  In addition to making many mistakes,

plaintiff failed to comply with specific requests from her supervisors.  In an e-mail dated August

2, 2004, Fien-Helfman stated:

I orally advised the OEIA staff to alter our past language to

9

> reference the SLB as a guide by analogy rather than a direct rule.
> Esther found it necessary to have me provide the actual language
> in writing, so I did so . . . Today, I received two CTR duration
> monitor comment letters from Esther, neither of which track the
> model language . . . she apparently decided to re-write my
> comments without discussing the matter with me . . . Her July 30,
> significantly changes the meaning of my 7/27 revision . . . .

Ex.27, Bates #SEC 690.  Fien-Helfman told plaintiff and copied Scholl in an e-mail the next day,

"I asked you to place the letter onto letterhead.  I should see it only once, when it is ready to

sign.  Instead, this is the third time you're sending or giving me a letter to review for this CTR.  I

believe this is completely unsatisfactory."  Ex.25, Bates #SEC 688.

On November 1, 2004, James M. Daly, Associate Director, proposed plaintiff's removal

for unsuccessful performance.[4]  Declaration of James Daly dated February 16, 2007, ("Daly

Decl.") at ¶ 6; Proposed Removal, Ex.32; Bates #SEC 588-663.  Thirteen different items were

identified showing plaintiff's failure to improve her performance to an acceptable level.  Id.

These were just a few examples of plaintiff's unacceptable performance.  Scholl Decl. at ¶25;

Ex. 4, at 33-34.  The examples included that plaintiff incorrectly recommended releasing

information that should not be released – one time because of a pending review and another time

because the information was not requested in the FOIA request.  Proposed Removal, Ex.32;

Bates #SEC 588-663.  Plaintiff recommended withholding information without identifying the

reason and incorrectly referred to a letter from the underwriters as a company response.  Id.  In

addition, she failed to locate documents for release that should have been located easily, and her

---

[4] On the same day Daly proposed plaintiff's removal, Valerie Lewis became a branch
chief in the EDGAR office and plaintiff's first-line supervisor.  EEO Report of Investigation
testimony of Valerie Lewis attached as Ex.  34 ("Lewis ROI Test.") at 6-7; Bates #SEC 2369-70.
Because of plaintiff's significant performance problems, Lewis, a new supervisor, had very
limited responsibility for plaintiff.

memoranda continued to contain errors.  Id.

Scholl did not necessarily want to have plaintiff removed from the federal service.  When plaintiff failed PIP I, Landy stated at the arbitration hearing "I did not want to see Grace harmed or fired. [Scholl] didn't either . . ."  Ex.8 at 30, Bates #SEC 1627.  Daly stated, "My understanding was we had several options, ranging from reduction in grade to removal from federal service . . . Mr. Scholl felt that reduction in grade was appropriate.  He felt it was more of a humane response . . . It's just that she was not able to perform at the level she was expected to." Ex. 8 at 265-66, Bates #SEC 1862-63.  After plaintiff's removal, Scholl stated to the EEO investigator,

> Grace was not a type of employee who you were anxious to get rid of.  She tried to do the job.  She just wasn't capable of doing it . . . It was never my intention in the beginning to fire her.  It was something that you have to write up and you have to take the action that's required.

Ex.4 at 45-46, Bates #SEC 2349-50.

Plaintiff provided a written response to the proposal to Alan Beller ("Beller"), the deciding official, along with 35 separate attachments on November 23, 2004.  Plaintiff's Response to Proposed Removal attached as Ex.36; Bates #SEC 280-461.  Plaintiff did not present an oral reply.  Removal Decision for Unsuccessful Performance and Form 50 Effective February 11, 2005, attached as Ex.37; Bates #SEC 2-5, 42.  After carefully considering the material forming the basis of the proposal and full consideration of the materials provided by plaintiff, Beller found that the unsuccessful performance identified in the proposal was supported by substantial evidence.  Ex.37, Bates #SEC 2-5.  Thus, Beller decided that plaintiff should be removed from her position of Paralegal Specialist and the Federal Service.  Id.  Plaintiff's

employment at the SEC ended on February 11, 2005.  Compl. at ¶ 70; Ex.37; Bates #SEC 42.

**B.    Job References**

On October 24, 2004, prior to plaintiff's proposed removal, Scholl was contacted by

telephone by Cheryl Dixon believed to be from the District of Columbia Superior Court ("D.C.

Superior Court")[5].  Dixon asked Scholl to respond to a number of questions regarding plaintiff.

Dixon asked that responses be provided in terms of a number from one to ten, with ten being the

highest possible rating.  Before responding, Scholl told Dixon that he believed to earn a high

rating of nine or ten, the person had to "walk on water."  He also told Dixon that plaintiff

strongly disagreed with his evaluation of her work and that Dixon needed to consider this fact

when weighing his responses.  Scholl responded to the questions by telling Dixon he would give

plaintiff sixes and sevens on matters related to plaintiff's work habits and twos and threes on the

quality of her work and her ability to adapt to a new work environment and new procedures. Ex.

4 at 48-52; Scholl Dep. at 238-48; Post-it Note of Conversation with Dixon attached as Ex.38,

Bates #SEC 2409.  Plaintiff admits that she got a second interview after Scholl spoke to the D.C.

Superior Court, and in that interview she admitted she was having problems with Scholl.  Report

of Investigation Testimony of Esther Grace Simmons dated June 14, 2005 ("Pl. ROI Test."), Ex.

39 at 53, Bates #SEC 2261.

Lewis provided a general written reference for plaintiff dated November 23, 2004 (less

than a month after she became plaintiff's supervisor).  General Reference Letter from Lewis

attached as Ex. 40; Bates #SEC 2411.  Lewis was also contacted by someone from the D.C.

Superior Court in December 2004.  Lewis Dep. at 35.  She responded by saying that plaintiff

---

[5]  It is clear from plaintiff's deposition testimony that she was pursuing a job with the
D.C. Superior Court. Ex. 7, pp. 44-60.

worked adequately at grade 7, reported to work timely, and that she would hire her again.  Id.

Plaintiff also alleges that Home Depot did not hire her because of a bad reference, but she admits that Home Depot would not tell her to whom they spoke at the SEC or what was said.  Pl. ROI Test., Ex. 34 at 55-56.  Scholl and Lewis were contacted only by the D.C. Superior Court and had no contact with any other prospective employer of plaintiff.  Lewis Dep. at 24-25; Lewis Decl. at ¶ 8; Scholl Dep. at 246; Scholl Decl. at ¶ 27.  Plaintiff does not identify anyone else whom Home Depot may have contacted  Pl. Dep. at 40-65.

**C.    EEO Administrative Process**

Plaintiff did not contact the SEC's EEO office until March 4, 2005 and was first interviewed by an EEO counselor on March 7, 2005.  Ex. 42; Bates #SEC 2130.  By letter from plaintiff's counsel dated April 6, 2005, plaintiff filed her formal EEO complaint with the SEC's EEO office alleging discrimination on the basis of race, sex, and retaliation.  Ex. 43; Bates #SEC 2119-27.

Scholl did not know, or have reason to believe, that plaintiff had contacted or filed a discrimination claim with the SEC's EEO office until he was contacted by the EEO investigator in 2005.  Ex. 4 at 9, Bates #SEC 2313.

A final agency decision ("FAD") was issued on August 12, 2005. Final Agency Decision attached as Ex.6; Bates #SEC 2084-111.  The FAD concluded that "neither the [plaintiff] nor the investigation disclosed any evidence to suggest that the SEC's stated reasons for its actions were a pretext for discrimination." Ex. 6 at 18; Bates #SEC 2111.  Thereafter, plaintiff filed this action on September 14, 2005.

13

## II. **ARGUMENT**

### Summary Judgment Standard

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986); <u>Tao v. Freeh</u>, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. <u>Anderson</u>, 477 U.S. at 247-48; <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" <u>Celotex Corp.</u>, 477 U.S. at 323 (citations omitted).

Moreover, Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the

nonmoving party to show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

In order to survive summary judgment, plaintiff must produce some evidence to show that the SEC intentionally discriminated against her on the basis of her race, sex or reprisal for having engaged in conduct protected by Title VII. Plaintiff may proceed either through using direct evidence of discrimination or under the now-familiar formula enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248 (1981). No direct evidence of intentional discrimination exists here. Accordingly, to prove her case, plaintiff must meet all the elements of the McDonnell Douglas formula.

**A.      Plaintiff's Claims on the Basis of Race and Gender**

**1.      No Prima Facie Case**

In the absence of direct evidence, a plaintiff may survive summary judgment and raise an inference of discrimination by relying on the McDonnell Douglas test. To do so, a plaintiff must first establish a prima facie case of discrimination. The undisputed material facts show that plaintiff has failed to present a prima facie case of race or gender discrimination.

To establish a prima facie case of discrimination on the basis of race or gender in a removal case, plaintiff must demonstrate that she (1) is a member of a protected group; (2) suffered an adverse employment action; and (3) the adverse action gives rise to an inference of discrimination. See Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002). Plaintiff has met the

first two prongs for a prima facie case.  There is no question that plaintiff is an African-American female, and she was removed from her federal employment.  However, she has presented no evidence that would give rise to an inference of discrimination.  One method of satisfying the third prong is "by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class."  George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005).  Another method is to show "that discharge was not attributable to the two . . . common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether."  Id.

   The undisputed facts show that plaintiff has failed to present any evidence that there were any similarly situated persons outside her protected class.  In fact, the record shows that the only other paralegals in the EDGAR Office were two African-American female paralegal specialists (Karlene Reid and Cynthia Brooks).  They were hired at the same time as plaintiff, were supervised by Scholl, were both promoted to grade 11, and are still employed at the SEC.  Ex.6 at 13, Bates #SEC 2106; Ex. 4 at 16-17; Scholl Dep., Ex. 3 at 79, 105, 107; Pl. Dep., Ex. 7 at 94. Plaintiff maintains that because she possesses a college degree, she was treated differently than these two African-American women. Ex. 39 at 11-12.  Possession of a college degree is not a basis for a discrimination complaint under Title VII.  42 U.S.C. § 2000e et seq.  Bases are limited to "race, color, religion, sex, or national origin" and retaliation.  Id.

   Furthermore, plaintiff cannot show that her termination was not attributable to performance below her employer's legitimate expectations.  It is undisputed that both Landy and Fien-Helfman found problems with plaintiff's work from when she came to the EDGAR Office until her removal.  E-mails of Fien-Helfman and Landy attached as Exs. 13 - 16; 18; 23-30; Ex. 2

16

at ¶ 15.  Examples of her poor performance are documented and attached to her proposed

removal.  Ex.32, Bates #SEC 588-663.  Beller not only reviewed the materials attached to the

proposed removal, but also plaintiff's affidavit and its numerous attachments, before he decided

to remove her.  Ex. 37, Bates #SEC 2-5.

Although Lewis testified that she believed plaintiff was performing adequately at the

grade 7 level, she did not supervise plaintiff at all until after the PIP II period.  As Scholl was

plaintiff's supervisor during the PIP II period, plaintiff was required to meet Scholl's

expectations as described in PIP II, not Lewis's.  Lewis admitted that she was new to the

EDGAR Office when she supervised plaintiff.  Scholl would review all of the paralegals' work

and provide substantive comments to Lewis.  He was training Lewis to properly review the

work.  Lewis Dep. at 24-27.

Accordingly, the record simply does not present any evidence that would give rise to an

inference of discrimination.  Thus, plaintiff has failed to demonstrate the third prong of the prima

facie case.

## 2.  In the Alternative, There Is a Legitimate Nondiscriminatory Reason and That Reason Is Not a Pretext for Discrimination.

The SEC has presented evidence of its legitimate non-discriminatory reasons for

removing plaintiff from her position – plaintiff's work performance was unacceptable and did

not improve to a satisfactory level under PIP II.

Despite the fact that she received the easier FOIA requests to work on and simple tasks

from Fien-Helfman, plaintiff continued to make errors.  Ex. 4 at 13.  Plaintiff's performance did

not improve and she was rated "Unacceptable" on her performance evaluation for the period

October 3, 2003 to April 30, 2004.  Ex. 31, Bates #SEC 2564.

17

On June 24, 2004, Scholl gave plaintiff PIP II which identified for her the problems with her work and provided specific ways plaintiff could improve her performance. Ex.11. During the 60-day PIP II period, plaintiff's work did not improve to an acceptable level. Plaintiff recommended releasing information that should not be released, improperly recommended withholding information and incorrectly referred to a letter from the underwriters as a company response. Plaintiff failed to locate documents for release that should have been located easily, and her memoranda continued to contain errors. As a result, Daly prepared the Notice of Proposed Removal for Unsuccessful Performance. Ex.32, Bates #SEC 588-663; Daly Decl. at ¶ 6. Plaintiff provided an extensive written reply. Ex.36, Bates #279-461. Beller reviewed all of the materials including plaintiff's reply, and relying on a number of the examples provided with the Notice of Proposed Removal he determined that plaintiff had failed to improve her performance to an acceptable level. Ex.37; Bates #SEC 2-5. The SEC has clearly articulated its legitimate non-discriminatory reason for plaintiff's removal.

Once the defendant has carried the burden of production, the McDonnell Douglas framework is no longer relevant, and "'the presumption raised by the prima facie case is rebutted,' and 'drops from the case.'" St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (quoting Burdine, 450 U.S. at 255 & n.10) (internal citations omitted). The burden then shifts back to the plaintiff to establish that defendant's legitimate, non-discriminatory reasons were not its true reasons but rather were pretextual. See McDonnell Douglas, 411 U.S. at 802-04; Burdine, 450 U.S. at 252-53. "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr., 509 U.S. 502, 515 (emphasis in original). "It is not enough, in other

18

words, to disbelieve the employer, the fact finder must believe the plaintiff's explanation of intentional discrimination." Id. at 519.  Plaintiff bears the ultimate burden of persuasion on the issue of whether she was intentionally discriminated against.  Burdine, 450 U.S. at 253.

Since the SEC has proffered a legitimate non-discriminatory reason for its decision to remove plaintiff, plaintiff must establish by a preponderance of the evidence that the proffered explanation is a pretext for discrimination.  McDonnell Douglas, 411 U.S. at 804; See Amiri v. Capital Restaurants Concepts, Ltd., 2005 WL 3273971 (D.D.C.).  Plaintiff must present preponderant evidence from which "a reasonable jury could infer intentional discrimination from '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).' Waterhouse v. District of Columbia, 289 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting Aka, 156 F.3d at 1289 (D.C. Cir. 1998) (en banc)).  This boils down to two inquiries: could a reasonable jury infer that the employer's given explanation was pretextual, and, if so, could the jury infer that this pretext shielded discriminatory motives?" Murray v. Gilmore, 406 F.3d 708, 713 (D.C. Cir. 2005). See also Pignato v. Am. Trans Air Inc., 14 F.3d 342, 349 (7th Cir. 1994) ("It is not enough for the plaintiff to show a reason given for a job action is not just, or fair, or sensible.  He must show that the explanation given is a phony reason").  "'[T]he fact that there are material questions as to whether the employer has given the real explanation will not suffice to support an inference of discrimination.'" Murray, 406 F.3d 708, 714 (quoting Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1291). One example of such a situation is where "'the plaintiff has created only a weak issue of material fact as to whether the

employer's explanation is untrue and there is abundant evidence in the record that no discrimination has occurred.'" Id.

Further, "[t]o avoid summary judgment, the plaintiff [is] required to produce some objective evidence showing defendant's proffered reasons are mere pretext." Batson v. Powell, 912 F. Supp. 565, 578 (D.D.C. 1996) (emphasis added). A plaintiff cannot create a factual issue of pretext merely on personal speculation of discriminatory or retaliatory intent. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) ("a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment") (quoting Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993)).

The undisputed documentary evidence of plaintiff's work product contained in the record overwhelmingly supports the conclusion that her work was unacceptable. One need only examine the numerous examples of her work attached to PIP II and the Notice of Proposed Removal to see the poor quality of her work as an GS-7 Paralegal Specialist. Exs. 11, 32, Bates #SEC 588-663, 710-872. Beller carefully reviewed the examples of plaintiff's inadequate performance as well as plaintiff's submissions and independently concluded that her work was unacceptable. Ex. 37, Bates #SEC 2-5.

Plaintiff, however, does no more than speculate that Scholl was motivated by discrimination when he found fault with her work.

> Plaintiff: And also he would yell at me . . . and make me feel bad. And I would wonder why is he treating me this way, must be because I'm an African-American female. That was the only thing come to my mind. I couldn't think of any other reason I was treated so poorly.
>
> Defendant's counsel: Did you have occasion to witness Herb Scholl yelling at anyone else in the office?

Plaintiff: Yes, ma'am.

Defendant's counsel: And who was that?

Plaintiff: Everybody.  Whatever assignment he working on, even the computer people, I've heard him yell . . . the whole office heard Herb yelling at Mr. Landy before.

Pl. Dep., Ex. 7 at 85-86.

Plaintiff also alleges that in February 2002, she pointed out an error that Scholl made, thereby embarrassing him.  Compl. at ¶ 25; Ex. 39 at 31-32.  She assumes, with no basis in fact, that this incident is the reason Scholl began finding problems with her work.  Id.  But, Landy and Fien-Helfman both e-mailed Scholl about problems with plaintiff's work before February 2002.  Exs.14 - 16, Bates #SEC 216-18.  Scholl pointed out that plaintiff was experiencing performance problems that needed to be addressed in the first performance appraisal he prepared for her in 2001.  Ex.12; Bates #SEC 171-77.  Moreover, plaintiff has not provided any evidence connecting the February 2002 incident to either criticisms of her work or an intent to discriminate.

In contrast, plaintiff has presented no evidence that she was performing her job "at the [SEC's] legitimate expectations."  George v. Leavitt, 407 F.3d 405, 412.  The record shows that it was not just Scholl who found fault with plaintiff's work.  Both Landy and Fien-Helfman found plaintiff's work inadequate.  In addition, the record shows that Scholl did not want to fire plaintiff.  Ex. 8 at 30, 265-66, Bates #SEC 1627, 1862-63; Ex. 4 at 45-46, Bates #SEC 2349-50.

Plaintiff's personal speculation and belief, no matter how sincere she may be, is not a sufficient basis for opposing a motion for summary judgment.  See McGill v. Munoz, 203 F.3d 843, 846 (D.C. Cir. 2000) (speculation insufficient to avoid summary judgment).  Plaintiff has

21

failed to show that the SEC's reasons for her removal are pretextual, and that discrimination is the real reason.  See St. Mary's Honor Ctr., 509 U.S. 502, 515.

**B.      Plaintiff''s Retaliation Claim**

To demonstrate a prima facie case of retaliation, plaintiff must establish three elements: "first, that she engaged in protected activity; second, that she was subjected to adverse action by the employer; and third, that there existed a causal link between the adverse action and the protected activity."  Broderick v. Donaldson, 437 F.3d 1226, 1231-32 (D.C. Cir. 2006).  An adverse action by an employer must be material to a reasonable employee but need not be related to the plaintiff's employment.  See Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006). A negative reference to a prospective employer motivated by retaliatory animus is an adverse action that can support a retaliation claim.  Hashimoto v. Dalton, 118 F.3d 671, 674 (9th Cir. 1997).  However, when a plaintiff claims a negative job reference is an adverse action, "plaintiff must allege: (1) the disparaging comments that were made . . .; (2) to whom the discriminatory statements were made; and (3) the position or positions for which plaintiff was denied employment was a result of the negative job references."  Niedermeier v. The Office of Max S. Baucus, 153 F. Supp. 2d 23, 31 (D.D.C. 2001); see also Amiri v. Capital Restaurant Concepts, Ltd., 2005 WL 3273971 (D.D.C. 2001).

Plaintiff alleges two entities sought references – D.C. Superior Court and Home Depot. She has failed to present a prima facie case of retaliation because she has failed to present evidence of an adverse action resulting from the references and she also cannot show a causal connection between her protected activity and any action of the SEC.

Although she alleges that Home Depot did not hire her because of a bad reference, she

admits that Home Depot would not say to whom they spoke at the SEC or what was said.  Ex. 39

at 55-56.  Thus, there is no adverse action and no <u>prima facie</u> case as to job references to Home

Depot because plaintiff has not established "to whom the discriminatory statements were made."

<u>Id.</u>

Plaintiff has not presented evidence that references from SEC staff caused plaintiff to be

denied a position at the D.C. Superior court.  <u>Niedermeier v. The Office of Max S. Baucus</u>, 153

F. Supp. 2d 23, 31.  Plaintiff has asserted that a co-worker was told at a bowling alley by a

representative of the D.C. Superior Courts that she would not be hired because of a poor job

reference. Ex. 39 at 46-48, This is a bare allegation with nothing to support its validity.  It is

hearsay evidence at best and cannot be used to successfully defeat summary judgment.  <u>See</u>

<u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586; <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075.

Furthermore, the fact that Scholl did not give plaintiff the highest ratings does not make

what he said disparaging or discriminatory.  Examples of disparaging comments to prospective

employers go beyond simply answering questions about job performance.  <u>See</u>, <u>e.g.</u>, <u>Jute v.</u>

<u>Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 178-79 (2d Cir. 2005) (reference was factually false);

<u>Harris v. Prince George's County Public Schools</u>, 141 F.3d 1158 (unpublished opinion) (4th Cir.

1998) (reference referring to poor performance not an adverse action where plaintiff's job

performance was unsatisfactory).  Also, Lewis clearly provided a positive job reference.  Lewis

Dep., Ex. 35 at 34-35; Ex. 40, Reference letter.

Plaintiff makes the bare assertion that during an interview with Mr. Brown of the D.C.

Superior Court, he told her she would not be hired because of bad references.  Ex. 39 at 54.

However, at deposition plaintiff categorically denies this and explains that she had three

interviews with the D.C. Superior Court and at no time did Mr. Brown say that he had received

unfavorable information about her from the SEC.  Pl's. Dep., Ex. 7, pp. 47-50.

There is no evidence of a causal connection between plaintiff's protected EEO activity

and Scholl's statements to the D.C. Superior Court.  Scholl spoke to the D.C. Superior Courts in

October 2004, Ex 38, Bates #SEC 2409, five months before plaintiff first contacted the EEO

office in March 2005 and more than two and one-half years after she told him that she believed

he discriminated against African-American females with college degrees.  EEO Counselor's

Report attached as Ex.42; Bates #SEC 2130; Ex. 39 at 10-12, Bates #SEC 2218-20.  Plaintiff

filed a grievance under the SEC's negotiated union grievance process between the time when

plaintiff complained of discrimination to Scholl and his telephone conversation with Dixon, but

discrimination was not raised in the grievance or the arbitration.  Halpin Decl., Ex. 9  at ¶ 5; Ex.

8; Memorandum to Alan Beller dated April 3, 2003 attached as Ex.22, Bates #SEC 629 (Plaintiff

describes her issues with Scholl as a "personality conflict.").  The SEC's negotiated grievance

process allows discrimination to be grieved.

Also, Scholl has testified that he was not aware of  the EEO aspect of plaintiff's issues

until he was contacted by the EEO investigator in 2005.  Ex. 4 at 9, Bates #SEC 2313.  Thus,

plaintiff cannot satisfy the causal connection requirement. See Forman v. Small, 271 F.3d 285,

301 (D.C. Cir. 2001) (plaintiff cannot rely on timing of events to show causation where there is a

long time lapse between the adverse action and the protected activity); see also Maramark v.

Spellings, 2006 WL 276979 (D.D.C.).   Therefore, plaintiff has failed to present evidence

supporting a prima facie case of retaliation.

However, even if one concludes that plaintiff has presented a prima facie case of

retaliation, the SEC has articulated legitimate non-discriminatory reasons for its actions. Scholl provided relatively low ratings to the D.C. Superior Court on the quality of plaintiff's work because he truthfully believed that the quality of her work was unacceptable despite the opportunities he gave her to improve her performance. Ex. 4 at 48 - 52; Ex. 3 at 238 - 48; see also Ex.32, Bates #588-663. At the time Scholl talked to Dixon on October 13, 2004, plaintiff's performance had already been found to be unacceptable under PIP II, and Daly would propose plaintiff's removal for unsuccessful performance less than three weeks later. Ex.32, Bates #SEC 588.

As with the gender and race claim, because the SEC has proffered a legitimate non-discriminatory reason for the job references, plaintiff must establish by a preponderance of the evidence that the proffered explanation is a pretext for retaliation. McDonnell Douglas, 411 U.S. at 804; See Amiri v. Capital Restaurants Concepts, Ltd., 2005 WL 3273971 (D.D.C.). Plaintiff has failed to present any evidence that the reason for the job references was a pretext for retaliation. Plaintiff has put forth no evidence that Scholl's statements were untrue or motivated by retaliatory animus.

Plaintiff's personal speculation and belief, no matter how sincere she may be, is not a sufficient basis for opposing a motion for summary judgment. See McGill v. Munoz, 203 F.3d 843, 846 (D.C. Cir. 2000) (speculation insufficient to avoid summary judgment). Plaintiff has failed to show that the SEC's reasons for the job references are pretextual, and that discrimination and/or retaliation is the real reason for Scholl's statements to Dixon. See St. Mary's Honor Ctr., 509 U.S. 502, 515. Plaintiff has failed to meet her burden to adduce evidence that any of the SEC's legitimate non-discriminatory, non-retaliatory reasons for the job

references is a pretext for discrimination or reprisal.  Summary judgment should therefore be entered in favor of defendant on plaintiff's claims.

### III.  CONCLUSION

For the reasons stated above, the SEC respectfully requests that the court grant the Motion for Summary Judgment in its entirety, and dismiss this matter with prejudice.  A proposed order granting the relief requested is attached.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

26

Of Counsel:

DAVID M. PINANSKY,
Senior Special Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E., Mail Stop 9612
Washington, D.C. 20549
Tel:    (202) 551-5191
Fax:    (202) 772-9263

Dated: February 16, 2007