UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTHER GRACE SIMMONS, )
)
Plaintiff, )
)
v. ) Civil Action No. 1:05CV01828 (RCL)
)
CHRISTOPHER COX, )
as and in his capacity as )
CHAIRMAN OF THE )
SECURITIES & EXCHANGE COMMISSION, )
)
Defendant. )
)

PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to LCvR 56.1 and LCvR 7(h), Plaintiff Esther Grace Simmons, by her undersigned counsel, states that there are genuine issues about the following material facts:

1. Whether plaintiff deserved to be rated "unacceptable" on June 3, 2004, and put under a Performance Improvement Plan on June 24, 2004?

Plaintiff's evidence shows that her work was at least satisfactory from October 3, 2003, through April 30, 2004, as it had throughout her employment as a Paralegal Specialist. See Plaintiff's Memorandum in Support of her Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.") at 20-21, 23.

2. Whether plaintiff performed at an "acceptable" level of performance during the second, 60-day, PIP in 2004 and thereafter?

Plaintiff's evidence shows that her work was at least satisfactory during those periods. See Pl. Mem. at 24-28.

3. Whether plaintiff made the mistakes which Herbert Scholl attributed to her in his Notice of Proposed Removal, dated November 1, 2004?

In her opposition to that proposal (Deft. Ex. 36), plaintiff submitted evidence to the Agency which refuted Mr. Scholl's accusations against her, as explained below:

In proposing plaintiff's removal, Mr. Scholl cited five instances in which he claimed that she demonstrated unacceptable knowledge of her job. Besides the fact that plaintiff's performance standards contained no objective means of measuring her performance on any of her clients, there is no merit to those contentions, as explained in plaintiff's affidavit in support of her opposition to the proposal to remove her, Deft. Ex. 36.

The first instance Mr. Scholl cited was a draft response to a FOIA request relating to *Phelps Dodge Corp.* (Request No. 2003-5148), which was sent to the SEC in August 2003. Mr. Scholl asserted that Plaintiff recommended release of a comment letter on a filing that the system showed as "under review," without indicating that the system was incorrect, and therefore Plaintiff should not have recommended release of the letter. See Notice of Proposed Removal, p. 1; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 14] ¶48. However, his recounting of events with regard to this request is not accurate. First, the "system" to which Mr. Scholl referred was the filing disposition report which reflected that the company's withdrawal was pending or open. However, as he advised Plaintiff to do, she used the FACTS system to determine whether the filing had cleared. That system showed that the filing had indeed cleared. See Exhibit 13 to Plaintiff's Opposition to Proposal to Remove. Therefore, the "system" was correct, and Plaintiff typed the clearance date into her FOIA recommendation. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 14] ¶48.

Second, when Plaintiff showed Mr. Scholl a copy of her initial recommendation letter, which advised that the filing was pending, he wrote on the bottom of the recommendation that Plaintiff should check to see if the filing had cleared and revise her letter accordingly. See

Attachment B to the Notice of Proposed Removal. After Plaintiff checked the FACT system and discovered that the filing had cleared, Plaintiff printed the FACTS system page and showed it to Mr. Scholl. Mr. Scholl then wrote on the FACTS page, "facts sheet showing cleared form 10 ok," and Plaintiff then drafted my recommendation letter accordingly. See Exhibit 13 to Plaintiff's Opposition to Proposal to Remove. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, pp. 14-15] ¶50.

The second instance Mr. Scholl cited that allegedly showed Plaintiff's lack of knowledge was a draft response to a FOIA request relating to *Metlife, Inc.* (Request No. 2003-4714), which was sent in July 2003. See Attachment C to the Notice of Proposed Removal. Mr. Scholl stated that Plaintiff recommended that SEC not release certain letters without citing the FOIA exemption that shields the letters from being released. However, Plaintiff did cite an exemption in her letter. The FACTS system and the ADHOC system showed that there was a filing pending. Plaintiff then confirmed that the filing was still under review. See Exhibit 14 to Plaintiff's Opposition to Proposal to Remove. As a result, in her letter, Plaintiff cited Exemption 4, the appropriate exemption. See Attachment C to the Notice of Proposed Removal; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, pp. 14-15] ¶50. In removing Plaintiff, Alan Beller, Director, Division of Corporation Finance, did not mention Plaintiff's work on this request as supporting his decision.

The third instance Mr. Scholl cited was a draft response to a FOIA request relating to *Weyerhaeuser Co.* (Request No. 2004-3185). See Notice of Proposed Removal, p. 2. Mr. Scholl quoted a sentence from her response and stated that it demonstrated her lack of knowledge because the fact that a filing relating to the company was amended has no relevance to the question whether the ADHOC system was in error or whether comments were issued. However,

Mr. Scholl misinterpreted Plaintiff's statement and in doing so, showed his lack of knowledge of the subject. Plaintiff stated that the ADHOC system was incorrect because it indicated that there was an amendment to the filing, instead of indicating that the filing was a P2. (P2 is a designation used when no comments are issued.) Therefore, Plaintiff did answer the question of whether there were comments issued and the question of whether the ADHOC system was correct. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 15] ¶52.

The fourth instance Mr. Scholl cited as allegedly showing Plaintiff's lack of knowledge was a draft response to a FOIA request relating to *Storage Networks, Inc.* (Request No. 2004.0617). Mr. Scholl stated that Plaintiff incorrectly identified an underwriter's letter as a company response letter in her response and that she incorrectly stated that a confidential treatment request was pending when it had been withdrawn. It was unjust to cite this as demonstrating Plaintiff's alleged lack of knowledge. First, when Plaintiff gave Mr. Scholl the draft response, the confidential treatment request was pending. See Exhibit 15 to Plaintiff's Opposition to Proposal to Remove. Second, there was no way that Plaintiff could have known that the letter was from an underwriter and not a company response letter. The Research Specialist referred to the letter in her FOIA Urgent Memo as a "comment letter." See Exhibit 16 to Plaintiff's Opposition to Proposal to Remove. In addition, the Research Specialist asked for the "comment letter" dated November 1, 2000, and the underwriter letter was the only letter which Plaintiff found that was dated November 2000. Accordingly, she responded to the request by attaching that letter. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 16] ¶52.

The last instance Mr. Scholl cited as demonstrating Plaintiff's alleged lack of knowledge was a draft response to a FOIA request relating to *Cache, Inc.* (Request No. 2003-5025). Mr. Scholl asserted that Plaintiff recommended the release of a transmittal letter for which the

requestor did not ask. Mr. Scholl again portrays an incomplete picture of Plaintiff's work. It is correct, according to the FOIA request, that the requestor, Richard Harrison, wanted only comment letters and company response letters. However, Mr. Scholl requested that Plaintiff submit all company correspondence. In addition, Mr. Scholl noted on Plaintiff draft response that the July 8, 2003 letter was a transmittal letter specifically excluded by the requestor, yet made no such statement regarding the June correspondence letter she noted. See Attachment F to the Notice of Proposed Removal. If his issue was with Plaintiff's citing correspondence for release, he should have commented on the June letter as well, but he did not. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 16] ¶53.

Mr. Scholl also contended that Plaintiff had deficiencies generally in her "execution of duties," stating that this element requires analysis and application of knowledge and skills. This claim was equally unwarranted because Mr. Scholl failed to indicate any specific instances where Plaintiff's independent analysis and execution were insufficient to complete assignments. All four of the instances that he noted involved analysis which was dependent on others. Furthermore, Mr. Scholl failed to note that his own constant changes in the way Confidential Treatment and FOIA requests were processed created an atmosphere of confusion, causing many staff members to make what Mr. Scholl referred to as errors, because they did not know what the rules were. See Exhibit 17 to Plaintiff's Opposition to Proposal to Remove; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 16] ¶54.

The first instance Mr. Scholl cited as allegedly showing Plaintiff's "unacceptable execution of duties" was a draft response to a FOIA request relating to *Phelps Dodge Corp.* (Request No. 2003-5148), which is also discussed above. Mr. Scholl stated that Plaintiff identified two letters for release which referred to prior communications with the company, but

Plaintiff did not address the prior communications in her response. See Notice of Proposed Removal, p. 3. Mr. Scholl did not accurately recount the circumstances surrounding this response. After drafting a response indicating the release of an April 28, 2003 letter and a July 11, 2003 letter, Plaintiff gave the draft to Mr. Scholl, who told her to check to see if there were any written comments issued, because both letters referred to prior discussions with the SEC. See Exhibit 18 to Plaintiff's Opposition to Proposal to Remove. Plaintiff then e-mailed three co-workers to ask them if there were any written comments issued in relation to these prior discussions. See Exhibit 19 to Plaintiff's Opposition to Proposal to Remove. They informed me that no written comments had been issued, and Plaintiff informed Mr. Scholl, as he had requested. Mr. Scholl did not ask Plaintiff to do anything further at the time. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 17] ¶55.

The second instance Mr. Scholl cited under "unacceptable execution of duties" was a draft response to a FOIA request relating to *Metlife, Inc.* (Request No. 2003-4714), which is also discussed above. Mr. Scholl contended that Plaintiff's response identified comment letters and company responses for release, but did not identify other correspondence for release that were covered by the FOIA request. See Notice of Proposed Removal, p. 3. However, in his memorandum regarding this request, the FOIA Research Specialist asked only about the release of company response letters which he attached to the memorandum and did not refer to other correspondence. See Attachment C to Notice of Proposed Removal. Accordingly, Plaintiff properly responded to the request regarding the release of the company response letters and attached the comment letters to those company response letters, as indicated in the FOIA requestor's letter. In sum, Plaintiff appropriately responded to what the SEC FOIA office needed. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 17] ¶56.

The third instance Mr. Scholl cited as allegedly showing Plaintiff's "unacceptable execution of duties" was a draft response to a FOIA request relating to *BMW Vehicle Owners Trust 2002* (Request No. 2004-1045). See Notice of Proposed Removal, p. 3; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 18] ¶57. Mr. Scholl asserted that in Plaintiff draft response, she referred to a staff comment letter dated August 18, 2003, as being releasable, but failed to attach the letter, and that she attached a confirmation letter dated August 18, 2003, but failed to refer to it. He also claimed that Plaintiff did not attach the confirmation letter to her revised version of her draft response, and that she failed to locate or address a staff comment letter dated April 2, 2001. According to the examiner, the SEC staff gave oral comments about this company on May 2, 2001. That is why no letter was issued. That is also why Plaintiff stated that she was unable to locate an April 2, 2001, letter and then, in the very next sentence of her revised draft response, stated that the staff gave oral comments on May 2, 2001. See Exhibit 20 to Plaintiff's Opposition to Proposal to Remove. As for the confirmation and comment letters dated August 18, 2003, I attached these letters to the revised draft response when I submitted the FOIA recommendation for Mr. Scholl's review. See Exhibit 20 to Plaintiff's Opposition to Proposal to Remove. Furthermore, the FOIA Research Specialist had asked about the release of a comment letter dated August 18, 2003, and stated the letter was attached. He did not refer to it as a confirmation letter. See Exhibit 21 to Plaintiff's Opposition to Proposal to Remove. Because of this, Plaintiff attached that same letter and likewise referred to it in her initial response as the August 18, 2003 comment letter. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, pp. 18-19] ¶58.

The last instance Mr. Scholl cited as an "unacceptable execution of [Plaintiff's] duties" was a draft response to a FOIA request relating to *Adobe Systems, Inc.* (Request No. 2003-5364).

See Notice of Proposed Removal, p. 4; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 19] ¶59. Mr. Scholl claims that in her draft response, Plaintiff identified a staff comment letter and a company response for release, but failed to identify other correspondence noted on the system and covered by the FOIA request. Mr. Scholl's claim was inaccurate for several reasons. First, in her memorandum regarding this request, the FOIA Research Specialist asked only about the release of the comment letter and company response letter thereto. She made no reference to other correspondence. See Attachment H to the Notice of Proposed Removal. Second and more importantly, the requestor was asking only for documents up to September 2, 2003 (id), the date of his request. See Attachment H to the Notice of Proposed Removal. The correspondence to which Mr. Scholl referred was all dated after September 2, 2003 (id.), and were therefore outside the scope of the FOIA request and not necessary to identify. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, pp. 19-20] ¶60. In removing Plaintiff, Alan Beller, Director, Division of Corporation Finance, did not mention Plaintiff's work on this request as supporting his decision.

The third deficiency alleged by Mr. Scholl was generally in Plaintiff's "communications." See Notice of Proposed Removal, p. 4; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 20] ¶62. This allegation was without merit as well. During the entire rating period and the 60-day Performance Improvement Plan, Plaintiff performed her work in a professional manner, and her interactions with co-workers and the general public were very courteous. See, e.g., Exhibit 22 to Plaintiff's Opposition to Proposal to Remove [Deft. Ex. 36]. She kept her supervisor abreast of her workload and the status of FOIA and CTR assignments. See, e.g., Exhibits 23-28 attached to Plaintiff's Opposition to Proposal to Remove [Deft. Ex. 36]. In addition, she always contacted the SEC FOIA Office Research Specialist by telephone

whenever she placed documents in the inter-office mail for their attention. See, e.g., Exhibit 29 to Plaintiff's Opposition to Proposal to Remove. Furthermore, demonstrating respect and fairness, she contacted examiners, accountants, and attorneys on a regular basis to locate letters not easily accessible on EDGAR or in the AD Office files and she always made sure her interactions with them were on a professional level. See, e.g., Exhibit 30 to Plaintiff's Opposition to Proposal to Remove. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 21] ¶63.

Although Plaintiff had no problems in communicating with other SEC offices on a daily basis, Mr. Scholl alleged that in four instances she was unsuccessful in her communications with others. See Notice of Proposed Removal, p. 4.

The first instance Mr. Scholl alleges as demonstrating Plaintiff's alleged lack of communication skills was an e-mail from a FOIA examiner stating that Plaintiff had sent her incomplete materials relating to two FOIA requests for *Storagenetworks, Inc.* (Request No. 2004-0617) and *Multimedia Games* (Request No. 2003-1236). See Notice of Proposed Removal, p. 4; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, pp. 20-21] ¶62. Mr. Scholl claimed that Plaintiff omitted a response letter with regard to the Storagenetworks request and omitted two letters, a comment, and a response letter with regard to the Multimedia Games request. However, Plaintiff did submit these materials to the examiner. As noted above, she always contacted the FOIA Office Research Specialist or examiner to inform them that she was placing the FOIA documents to the FOIA in inter-office mail, and she did so in this case. Once she sent documents in the inter-office mail, she relinquished control over whether or when any or all of the documents would arrive timely. To try to eliminate the risk of documents being lost or misplaced in inter-office mail, Plaintiff made it a practice to fax over the documents, then place

them in the mail and e-mail the recipient of their impending arrival. In this case, because of the volume of letters involved, she could not fax them. Mr. Scholl should have not held Plaintiff responsible for the mailroom's error. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, pp. 21-22] ¶62. In removing Plaintiff, Alan Beller, Director, Division of Corporation Finance, did not mention plaintiff's work on this request as supporting his decision.

The second instance which Mr. Scholl alleged as demonstrating her lack of communication skills was a draft response to a FOIA request relating to *Novastar Financial, Inc.* (Request No. 2004-0107). See Notice of Proposed Removal, p. 4; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 21] ¶63. Mr. Scholl claimed that in her draft response, she erroneously indicated that a copy of the FOIA request had been referred to the Division of Enforcement because in the cover sheet it sent with the request, the FOIA office did not note that the request had been referred. He then stated that, although there was a pending enforcement inquiry, it was not instituted until after the request had been sent. This misrepresented the practice regarding pending enforcement inquiries. In an e-mail dated July 16, 2002, Mr. Landy, then the FOIA supervisor, informed FOIA staff that they were always to mention any matters under investigation ("MUI's") in their memos (responses), whether opened at the time they received the FOIA request or thereafter, because "we do not want to risk releasing correspondence that may be needed for an investigation." See Exhibit 31 to Plaintiff's Opposition to Proposal to Remove. As a result, Plaintiff always mentioned any pending enforcement inquiries in my draft responses, and she did so in this case. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 21] ¶63.

The third instance Mr. Scholl alleged as demonstrating Plaintiff's lack of communication skills was a draft response to a FOIA request relating to *Weyerhaeuser Co.* (Request No. 2004-

3185). See Notice of Proposed Removal, p. 4; Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 21] ¶64. Mr. Scholl claimed that the FOIA office requested that Plaintiff search for a no review letter dated August 4, 2003, and that her response, indicating that the August 4, 2003, date in the ADHOC system was a clearance date for a monitor, did not address whether the August 4, 2003 letter existed or not. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 21] ¶64. Mr. Scholl completely misrepresented the events surrounding Plaintiff's drafting of this response. She investigated whether the letter existed, by speaking with an accountant who had worked on the company's filing. The accountant advised her that no letters existed and that the August 4, 2003, date on the system was a clearance date for a monitor. See Exhibit 32 to Plaintiff's Opposition to Proposal to Remove. Because of this, Plaintiff drafted a response indicating what the August 4, 2003, date on the system meant. She then e-mailed Mr. Scholl that she had drafted a response and advised him that the accountant had indicated no letters existed and provided her with an explanation, which she included in the draft response. Plaintiff also requested that Mr. Scholl review the language she used to explain the letters, since he might want to reword it. See Exhibit 33 to Plaintiff's Opposition to Proposal to Remove. Mr. Scholl then reworded the language Plaintiff used. Therefore, Mr. Scholl was fully aware that Plaintiff's reference to the clearance date was meant to address the question regarding the August 4, 2003 letter and that she was seeking his assistance in wording the response to cover the issue properly. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, pp. 21-22] ¶65. Mr. Scholl's failure to acknowledge her communications suggested that at best his memory was faulty and at worst that he is deliberately distorted Plaintiff's work record.

Mr. Scholl alleged a fourth instance as demonstrating Plaintiff's lack of communication skills. See Notice of Proposed Removal, p. 5; Affidavit of Esther Grace Simmons, 11/23/04

[Deft. Ex. 36, p. 22] ¶66. He cited a first version of a response to a FOIA request relating to *Advanced Neuromodulation Systems, Inc.* (Request No. 2003-4485) and claimed that she failed to include a copy of a staff letter. Mr. Scholl also asserted that Plaintiff indicated a different amount of time for how long it took her to research the response on my first draft, as compared to her second draft, without explaining the difference. Mr. Scholl dug back into Plaintiff's work before her 2004 Performance Improvement Plan to raise this incident, and he inaccurately described it. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, pp. 22-23] ¶66. Plaintiff drafted the draft responses to which Mr. Scholl referred before April 8, 2004, and she faxed the final response over to the FOIA office on April 8, 2004. See Exhibit 34 to Plaintiff's Opposition to Proposal to Remove. Mr. Scholl placed Plaintiff on a PIP on June 24, 2004. In his Notice of Opportunity to Improve Performance, dated June 24 [Deft. Ex. 11], he referred to Plaintiff's work on this *Advanced Neuromodulation Systems,* FOIA request. See Deft. Ex. 11, p. 3. Therefore, in the proposal to remove her, Mr. Scholl referred to an incident that occurred over two months before he placed her on the PIP and was beyond the scope of the Notice of Proposed Removal. In addition, Plaintiff sent the first draft response, indicating she had spent 30 minutes on it. She then made revisions in the draft and changed the time she spent to 45 minutes. See Attachment L to the Notice of Proposed Removal. The final response Plaintiff sent to the FOIA office indicated she spent a total of 50 minutes on it. See Exhibit 35 to Plaintiff's Opposition to Proposal to Remove. As she spent more time on the response, she indicated that on her drafts. Affidavit of Esther Grace Simmons, 11/23/04 [Deft. Ex. 36, p. 23] ¶66. In removing Plaintiff, Alan Beller, Director, Division of Corporation Finance, did not mention plaintiff's work on this request as supporting his decision.

4. Whether defendant was motivated to remove plaintiff because of her race and/or

gender?

Plaintiff's evidence shows that Mr. Scholl was indeed motivated to remove plaintiff because of her race and/or gender, particularly because she was an assertive college-educated African-American woman. See generally Pl. Mem., particularly pp. 7-10.

5. Whether defendant was motivated to remove plaintiff because of her EEO protected activities?

Plaintiff's evidence shows that Mr. Scholl was indeed motivated to remove plaintiff because of her EEO protected activities. See Pl. Mem., particularly pp. 33-34.

6. Whether defendant retaliated against plaintiff by giving her bad references when she applied for jobs at the D.C. Superior Court and Home Depot, among others?

Besides arguing that plaintiff did not engage in protected activities and does not show a causal relationship between those activities and defendant's adverse actions, defendant also argues that plaintiff cannot identify the person at Home Depot to whom defendant gave bad references. Deft. Mem. at 23. However, the facts are sufficient to show that someone in the Home Depot personnel office advised her that the store was impressed with her education background and experience, but when it had contacted the Agency for a reference, the Agency reported that Plaintiff had an employment dispute with the Agency that was being investigated at this time and that for that reason, Home Depot would not hire her. See Pl. Mem. at 29.

With respect to the D.C. Superior Court, plaintiff has even stronger evidence, from employees of that court who directly connected her denial of a position there with negative statements made about her by Mr. Scholl. Indeed, Mr. Scholl admittedly made plainly negative statements about plaintiff's performance to officials of that court. See Pl. Mem. at 22-23.

Respectfully submitted,

/s/ Alan Banov

ALAN BANOV #95059
Alan Banov & Associates
1819 L Street, N.W., Suite 700
Washington, D.C. 20036
(202) 822-9699
Fax: (202) 842-9331
ab@banovlaw.com
Attorney for Plaintiff