UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTHER GRACE SIMMONS,           )
                                )
        Plaintiff,              )
                                )
        v.                      ) Civil Action No. 1:05CV01828 (RCL)
                                )
CHRISTOPHER COX,                )
as and in his capacity as       )
CHAIRMAN OF THE                 )
SECURITIES & EXCHANGE COMMISSION, )
                                )
        Defendant.              )
_____)

PLAINTIFF'S RESPONSE TO
DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to LCvR 56.1 and LCvR 7(h), Plaintiff Esther Grace Simmons, by her undersigned counsel, responds as follows to Defendant's Statement of Material Facts Not In Dispute:

1.   The SEC is an independent federal regulatory agency created in 1934 under the Securities Exchange Act of 1934.

   Admitted

2.   The primary mission of the Agency is to administer and enforce the federal securities laws.

   Admitted.

2. (sic) Plaintiff was hired by the SEC in 1988 as a GS-4 Clerk Typist.

   Admitted

3. Over her years at the SEC, plaintiff was promoted, and by April 1997, plaintiff was GS-7, Securities Compliance Technician in the Office of Compliance Inspections and Examinations.

Admitted

4. In 2000, new GS-9 paralegal positions were posted in the Division of Corporation Finance ("Corp Fin") Office of EDGAR and Information Analysis ("EDGAR Office").

Admitted

5. Plaintiff applied for one of the paralegal positions and was interviewed by Herbert Scholl ("Scholl"). It was Scholl who selected plaintiff for one of the paralegal positions.

Plaintiff admits that Mr. Scholl signed the certificate of selection as the Selecting Official and that he was <u>one</u> of the persons who interviewed her for the position of Paralegal Specialist. First, plaintiff was interviewed by Amy Starr, an Attorney in the Division of Corporation Finance.

6. At the same time Scholl selected plaintiff, Scholl selected two other African-American female paralegal specialists (Karlene Reid and Cynthia Brooks).

Admitted

7. Scholl supervised the plaintiff as well as Reid and Brooks. He eventually promoted Reid and Brooks to a grade 11. Reid and Brooks are still employed at the SEC.

Admitted

8. Plaintiff's duties in the EDGAR Office primarily involved Freedom of Information Act ("FOIA") requests.

Admitted

9. Plaintiff's FOIA work was reviewed by a senior member of the EDGAR staff, Mr.

Richard Landy.

>Admitted

10. Plaintiff also helped process confidential treatment requests ("CTRs").

>Admitted

11. When companies file with the SEC, they sometimes want to keep certain information confidential in otherwise public filings. They make an application to keep the information nonpublic. Id. Plaintiff was responsible for reviewing the CTR against a checklist to see whether it meets the criteria for an immediate grant of confidential treatment.

>Admitted

12. Mr. Jacob Fien-Helfman ("Fien-Helfman") was plaintiff's reviewer for the CTRs.

>Admitted

13. Scholl rated plaintiff "pass" in her performance evaluation for the period August 27, 2000 to April 30, 2001.

>Admitted

14. Scholl, however, stated in the evaluation that plaintiff's performance needed improvement.

>Admitted

15. During the period from May 2001 to April 2002, Scholl received complaints about plaintiff's work from Landy and Fien-Helfman, the primary reviewers of plaintiff's work.

>While Landy and Fien-Helfman may have complained to Scholl about plaintiff's work, plaintiff denies that she deserved such criticism and states that they also praised her work during that period. See Pl. Mem. at 6-7.

16. Based on that feedback and Scholl's own observations in July 2002, Scholl rated plaintiff "fail" for the period from May 2001 to April 2002.

Plaintiff admits that Scholl rated her "fail" for the period from May 2001 to April 2002. Plaintiff disputes defendant's explanation as to why he rated her "fail" and asserts that he did so for discriminatory reasons.

17. Plaintiff failed the technical proficiency, analytical ability, and communications skills critical elements.

Plaintiff admits that Scholl failed her on the technical proficiency, analytical ability, and communications skills critical elements, but denies that she deserved to fail on any elements. See Pl. Mem. at 6-9.

18. On October 1, 2002, Scholl gave plaintiff a performance improvement plan ("PIP I").

Admitted

19. The PIP I identified the areas where plaintiff was unsuccessful and provided her with 90 days to improve her performance in the three critical elements that she was rated "fail" in July 2002.

Plaintiff admits that the PIP I asserted that she was unsuccessful in certain areas and that it gave 90 days to improve her performance in the three critical elements that she was rated "fail" in July 2002, but denies that her performance was in fact unsuccessful and argues that Mr. Scholl contrived to give her a bad evaluation. See Pl. Mem. at 8-12.

20. During the 90-day PIP I period, plaintiff's work was primarily reviewed by Scholl.

Admitted

21. Scholl found plaintiff's performance unacceptable during the PIP I period because she failed to improve in technical proficiency, analytical ability, and communication skills.

Plaintiff admits that Scholl rated as unacceptable plaintiff's performance during the PIP period, but disputes defendant's explanation about why he did so and asserts that he did so for discriminatory reasons.

22. In an e-mail to Scholl dated July 1, 2003, Landy stated, "Yesterday I sent you a copy of my E-mail message to Grace about her two IM [Investment Management] FOIA requests. I gave her the two sentences she had to include in her memos. I thought she would cut and paste them into her memos. Well. Herb, it her [sic] took her three tries."

Admitted

23. Effective July 27, 2003, Plaintiff was demoted to SK-7. The demotion letter was dated October 19, 2003, and stated inter alia that the demotion was because of unsuccessful performance as a grade 9.

Admitted

24. Plaintiff filed a union grievance over the demotion, which went to arbitration.

Admitted

25. The arbitrator upheld the demotion.

Admitted

26. Neither plaintiff nor the union raised a discrimination claim.

Admitted that they did not raise a discrimination claim in the arbitration procedure. However, by e-mail in 2002 and a memo on April 3, 2003, plaintiff alleged discrimination to management.

27. In a Memorandum to Alan Beller dated April 3, 2003, Plaintiff describes her issues with Scholl as a "personality conflict."

Plaintiff admits that she said that, but denies the implication that a "personality conflict" was the real reason for Scholl's abusive treatment of her.

28. After the demotion occurred, plaintiff was not given any of the more complicated FOIA requests nor was she given CTRs to process.

Plaintiff disputes this. See her Affidavit [Ex. 6] ¶ 24.

29. Plaintiff continued to perform poorly.

Plaintiff denies that after her demotion in 2003, she continued to perform poorly. See Pl. Mem. at p. 10.

30. On February 23, 2004, Scholl spoke to plaintiff about her performance and set goals for her to improve.

Plaintiff admits that Scholl spoke with her about her performance, but denies that he needed to do so.

31. On June 3, 2004, Scholl gave plaintiff an "unacceptable" performance evaluation for the period ending April 30, 2004, finding her performance unacceptable in the areas of knowledge of field or occupation, execution of duties, and communications.

Plaintiff admits that on June 23, 2004, Scholl gave her an "unacceptable" performance evaluation for the period ending April 30, 2004, but denies the implication that her performance was unacceptable in the areas of knowledge of field or occupation, execution of duties, and communications, and disputes defendant's implied explanation for the rating.

32. On June 24, 2004, Scholl gave plaintiff PIP II with numerous examples of errors that plaintiff had made attached thereto. Plaintiff was given 60 days to improve her performance.

Plaintiff admits that on June 24, 2004, Scholl gave plaintiff a PIP memo with an attachment with alleged examples of errors which Scholl alleged plaintiff had made and that he giver her 60 days to improve her performance.

33. As part of the PIP II, Plaintiff was instructed to:

1. Significantly reduce the number of inconsistencies, unnecessary or incorrect references and typographical or similar errors from your memoranda.
2. Demonstrate a better understanding of the confidential treatment, FOIA and related SEC rules in your oral and written presentations.
3. Demonstrate a better understanding of Division, FOIA, and confidential treatment policies.
4. Follow Division procedures in retrieving information, dealing with the staff and outsiders, preparing memoranda, orders, and letters and in providing the detail necessary to evaluate issues raised by the FOIA or confidential treatment requests assigned to you for processing.

Admitted

34. Plaintiff's work did not improve during the PIP II 60-day improvement period.

Plaintiff disputes defendant's allegation that her "work did not improve during the PIP II 60-day improvement period."

35. In addition to making many mistakes, plaintiff failed to comply with specific requests from her supervisors.

Plaintiff disputes this generalized "fact."  See generally Pl. Mem.

36. On November 1, 2004, James M. Daly, Associate Director, proposed plaintiff's removal for unsuccessful performance and identified thirteen different items evidencing plaintiff's failure to improve her performance.

Plaintiff admits that on November 1, 2004, James M. Daly proposed plaintiff's removal for unsuccessful performance, but disputes the implication in defendant's putative "fact" that she failed to improve her performance.

37. On the same day that Daly proposed plaintiff's removal, November 1, 2004, Valerie Lewis became a branch chief in the Edgar office and plaintiff's first-line supervisor.

Admitted

38. Plaintiff provided a written response to the proposal to Alan Beller ("Beller"), the deciding official, along with 35 separate attachments on November 23, 2004.

Admitted

39. After carefully considering the material forming the basis of the proposal and full consideration of the materials provided by plaintiff, in her reply, Beller found that the unsuccessful performance identified in the proposal was supported by substantial evidence and decided to remove plaintiff from her position with the SEC.

Plaintiff admits that Beller decided to remove plaintiff from her employment with the SEC, but disputes defendant's assertion that Beller "carefully consider[ed] the materials provided by plaintiff, in her reply," and asserts that Beller participated in the discrimination against plaintiff.

40. Plaintiff's employment at the SEC ended on February 11, 2005.

Admitted

41. On October 24, 2004, prior to plaintiff's proposed removal, Scholl was contacted by telephone by Cheryl Dixon from the Washington, D.C., Superior Court.

Admitted

42. Dixon asked Scholl to respond to a number of questions regarding plaintiff. Dixon asked that responses be provided in terms of a number from one to ten, with ten being the highest possible rating.

Plaintiff has no direct information about what Scholl and Dixon said.

43. Scholl told Dixon that he believed to earn a high rating of nine or ten, the person had to "walk on water."

Plaintiff has no direct information about what Scholl and Dixon said.

44. He also told Dixon that plaintiff strongly disagreed with his evaluation of her work and that Dixon needed to consider this fact when weighing his responses.

Plaintiff has no direct information about what Scholl and Dixon said.

45. Scholl responded to the questions by telling Dixon he would give plaintiff sixes and sevens on matters related to plaintiff's work habits and twos and threes on the quality of her work and her ability to adapt to a new work environment and new procedures.

Plaintiff has no direct information about what Scholl and Dixon said.

46. Plaintiff admits that she got a second interview after Scholl spoke to Dixon, and in that interview she admitted she was having problems with Scholl.

Plaintiff admits that she got a second interview after Scholl spoke to Dixon, and in that interview she admitted she was having problems with Scholl.

47. Lewis provided a written reference for plaintiff dated November 23, 2004 (less than a month after she became plaintiff's supervisor.

Admitted

48. Lewis was also contacted by someone from the D.C. Superior court in December 2004.

Plaintiff has no direct information about this asserted "fact," but believes it to be true. Lewis provided a written reference for plaintiff dated November 23, 2004 (less than a month after she became plaintiff's supervisor).

49. She responded by saying that plaintiff worked adequately at grade 7, reported to work timely, and that she would hire her again.

Plaintiff has no direct information about this asserted "fact," but believes it to be true.

50. Plaintiff admits that Home Depot would not tell her to whom they spoke at the SEC or what was said.

Admitted

51. Scholl and Lewis were contacted only by the D.C. Superior Court and had no contact with any other prospective employer of plaintiff. Plaintiff has no direct information about this asserted "fact."

52. Plaintiff has not identified anyone else whom Home Depot may have contacted at the SEC.

The statement is too confusing to admit or deny.

53. Plaintiff first contacted the SEC's EEO office on March 4, 2005 and was interviewed by an EEO counselor on March 7, 2005.

Admitted

54. On April 6, 2005, by letter from her counsel, plaintiff filed her formal EEO complaint with the SEC's EEO office alleging discrimination on the basis of race, sex, and retaliation.

Admitted

55. A final agency decision ("FAD") was issued on August 12, 2005.

Admitted

56. The FAD concluded that "neither the [plaintiff] nor the investigation disclosed any evidence to suggest that the SEC's stated reasons for its actions were a pretext for

discrimination."

      Plaintiff admits that the FAD reached the quoted "conclusion," but disputes the conclusion and asserts that the SEC's stated reasons for its actions <u>were</u> a pretext for discrimination against her.

                                            Respectfully submitted,

                                            /s/ Alan Banov
ALAN BANOV #95059
Alan Banov & Associates
1819 L Street, N.W., Suite 700
Washington, D.C. 20036
(202) 822-9699
Fax: (202) 842-9331
ab@banovlaw.com
<u>Attorney for Plaintiff</u>