UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ESTHER GRACE SIMMONS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NUMBER:  1:05CV01828 |
| | : | |
| CHRISTOPHER COX, | : | JUDGE: Royce C. Lamberth |
| as and in his capacity as | : | |
| CHAIRMAN OF THE | : | |
| SECURITIES AND EXCHANGE | : | |
| COMMISSION, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Plaintiff's Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition"), Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute, and Plaintiff's Statement of Material Facts in Dispute fail to articulate any material fact precluding summary judgment. In the face of the overwhelming documentation of plaintiff's unacceptable work that led to her removal, without providing any competent evidence, plaintiff simply disagrees with the SEC's assessment of her work and has failed to show that she was subject to discrimination and/or reprisal.

**ARGUMENT**

I.   **The Sex and Race Discrimination Claims**

   A.   No <u>Prima Facie</u> Case

One element required to establish a <u>prima facie</u> case of discrimination on the basis of race or gender in a removal case is that the adverse action must give rise to an inference of discrimination. <u>See</u> <u>Stella v. Mineta</u>, 284 F.3d 135, 145 (D.C. Cir. 2002). There are two ways to satisfy this requirement – "by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class . . . [or] that discharge was not attributable to the two . . . common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether." <u>George v. Leavitt</u>, 407 F.3d 405, 412 (D.C. Cir. 2005).

Plaintiff has presented no evidence that similarly situated employees outside her protected class were treated differently than she. The individuals to whom she refers are either not outside her protected class or are not similarly situated. <u>See</u> Opposition at 41. Plaintiff cannot identify any paralegal assistants in the EDGAR Office outside her protected class because they were all African-American females, and plaintiff has not identified any other persons who were similarly situated. Def. Ex. 2 ¶ 11.[1] <u>See</u> <u>Silver v. Leavitt</u>, 2006 WL 626928 (D.D.C.) (Defendant entitled to summary judgment because plaintiff "failed to establish that she was similarly situated in all relevant regards . . ."). Plaintiff also has not presented evidence that her discharge was not attributable to performance below the employer's legitimate expectations. The voluminous

---

[1] Exhibits which were attached to Defendant's Memorandum in Support of Motion for Summary Judgment shall be referred to herein as "Def. Ex. ___", and will use the same exhibit numbers as in Defendant's Memorandum in Support of Motion for Summary Judgment.

documentation leading up to and surrounding her discharge shows that her supervisors reasonably believed she did not and could not satisfactorily perform her duties. Because plaintiff has: 1) failed to identify any similarly situated employees outside her protected class who were treated more favorably than she; 2) presented no competent evidence to dispute the fact that her work was unacceptable; and 3) presented no other evidence that could give rise to an inference of discrimination, plaintiff has failed to present a prima facie case of race or sex discrimination. George v. Leavitt, 407 F.3d 405.

      B.      Legitimate Non-discriminatory Reason and Pretext

Plaintiff has not contested whether the SEC has presented evidence of its legitimate non-discriminatory reason for removing plaintiff – plaintiff's work was unacceptable and did not improve even when given the opportunity under PIP II. Def. Ex. 11. Thus her only argument is that the SEC's reason was a pretext for discrimination, but plaintiff has failed to present any competent evidence contradicting the undisputed material facts of plaintiff's documented poor work. E.g. Def. Exs. 10, 11, 13-16, 18, 20, 23, 26-30, 32, 37. Instead, plaintiff, through speculation and bare assertion, weaves a conspiracy theory that is designed to obfuscate the clear fact that plaintiff's performance was below the SEC's legitimate expectations.

Plaintiff claims that she lost favor when she pointed out a mistake by Scholl in February 2002. Opposition at 32-33. She argues that Scholl would not tolerate criticism from educated or assertive African-American females, so he started a vendetta to have her fired. Id. at 39-41.

To support this allegation, plaintiff maintains that Scholl orchestrated the criticism plaintiff received from her primary reviewers, Landy and Fien-Helfman. Id. at 9-10. However, in several e-mails both Landy and Fien-Helfman complained to Scholl about plaintiff's

performance months before the February 2002 incident. Def. Exs. 13-16, Bates #SEC 217-18.[2] And, in plaintiff's performance appraisal for the period ending April 30, 2001, Scholl stated that plaintiff had yet to complete the transition from a clerical employee to a paralegal and needed to improve her communication, examination and analytical skills. Def. Ex. 12. He went on to say plaintiff needed to pay more attention to detail. Id. Because plaintiff cannot show that her criticism of Scholl in February 2002 was in any way related to how her work was perceived by Landy, Fien-Helfman and Scholl, her argument that Scholl thereafter began to discriminate against her and falsely evaluate her work because she was an African-American female who dared criticize him fails in its entirety. In addition, anger at being criticized is not the same as discrimination. Plaintiff has not shown any connection between the two.

Plaintiff contests the fact that her work was unacceptable, but the documented evidence of her unacceptable performance is overwhelming. E.g. Def. Exs. 10, 11, 13-16, 18, 20, 23, 26-30, 32, 37. Plaintiff's evidence consists of a coworker's statement that the criticism of her work was "'nitpicking' . . . such as punctuation (i.e., a comma or a period)." Reid Affd't ¶ 14.[3] The well documented examples of her work show that plaintiff made much more serious mistakes, such as recommending disclosure of materials that should not be disclosed, or not obtaining information that was readily and easily found. See Def. Exs. 10, 11, 13-16, 18, 20, 23, 26-30, 32, 37. Plaintiff has presented no evidence that other paralegal assistants made such serious mistakes.

---

[2] E-mails from Landy and Fien-Helfam dated November 2 and 16, 2001.

[3] This is in stark contradiction to the arbitrator's decision in 2004, which did not find the performance expectations to be improper. Def. Ex. 20.

Plaintiff's purported reasons for the mistakes she made during the PIP II period that she presented to Alan Beller, the deciding official, Def. Ex. 36, and presented again in Plaintiff's Statement of Material Facts in Dispute ¶ 3, are nothing more than Plaintiff's opinion of her own work. It is well established that a plaintiff's self-serving assessment of her own performance is irrelevant for the purposes of withstanding summary judgment. Waterhouse v. District of Columbia, 124 F. Supp.2d 1, 5 (D.D.C. 2000) ("plaintiff's self-serving statements as to her competence or her superior performance do not serve to raise material issues of fact regarding defendants' proffered reasons for plaintiff's termination"); Valles-Hall v. Center for Nonprofit Advancement, 2007 WL 779385, *25 (D.D.C.) ("'[w]hether plaintiff believes [her coworkers'] complaints were justified is irrelevant, as the issue is whether [Johnson] received the complaints and believed that plaintiff's performance was deficient'") (quoting Waterhouse); Vasilesky v. Reno, 31 F.Supp.2d 143, 151 (D.D.C. 1998) ("An employer is entitled to rely on his own perception of an employee's work performance."); Toulan v. DAP Products, Inc., 2007 WL 172522, *9 (D. Md. 2007) ("Plaintiff's own assertions that at all times her job performance was satisfactory do not constitute competent evidence. The self-perception of a plaintiff as to her qualifications ... is irrelevant; what matters is 'the perception of the decision maker.' ") (quoting Chyu v. Maryland Dept. of Health & Mental Hygiene, 198 F. Supp.2d 678, 683 (D. Md. 2002)).

Plaintiff questions whether Beller carefully considered the materials before him when he was deciding whether to remove her and alleges that Beller "participated in the discrimination against plaintiff." Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute ¶ 39. Plaintiff provides no evidence to support the allegation. See Batson v. Powell, 912 F. Supp. 565, 578 (D.D.C. 1996) ( "[t]o avoid summary judgment, the plaintiff [is] required to

produce some objective evidence showing defendant's proffered reasons are mere pretext."). Beller carefully considered all of the material that was presented to him both with the proposed removal and plaintiff's extensive response, as is evidenced by the fact that he did not cite all of the examples of poor work contained in the proposed removal. Def. Exs. 36, 37. Instead, he relied on nine of the strongest examples and expressly did not base his decision on the others. Id. The record leaves no doubt that Beller believed plaintiff's work was unacceptable and that he was not motivated by discrimination when he decided to remove plaintiff. Valles-Hall, 2007 WL 779385.

Valerie Lewis, an African-American female, became plaintiff's supervisor after plaintiff had failed PIP II. Lewis transferred to the Division of Corporation Finance ("Corp. Fin.") from the Freedom of Information Act Office. Lewis Dep. at 11-12; Def. Ex. 11. Although Lewis believed plaintiff's performance was acceptable during the few months she supervised her, Lewis was new to the EDGAR Office. Lewis Dep. at 24-27. Scholl reviewed all of the work submitted by the paralegal assistants that Lewis supervised in order to train Lewis what to look for in her new job. Lewis Dep. at 25-27. Her assessment of plaintiff's work is not competent evidence to refute the documented examples showing that plaintiff's work was unacceptable prior to and during the PIP II period. Def. Exs. 11, 32. Lewis's letter of reference written for plaintiff is also not competent evidence that plaintiff's work was acceptable. Mefford v. Wilkins Buick, Inc., 1999 WL 33105611 (D.Md.) ("letter [of reference] cannot be accepted as material evidence that the reason given . . . for plaintiff's discharge was pretextual.").

In a bizarre and ludicrous argument, plaintiff alleges that her work product was changed by others in a conspiracy to remove her. Plaintiff describes a situation where the curser on her

computer was moving by itself. Opposition at 12-13. Even if this were to be believed, plaintiff has not shown how the cursor's telekinetic movements were in any way related to the poor work product already in evidence in this case and relied upon for her removal. Plaintiff also maintains that work returned to her had been retyped. But, she does not deny that the work product relied upon for her removal was hers and has put forth no examples of the work she alleges was changed by others. Id.

Plaintiff has presented no evidence that her work was, in fact, acceptable. The record is replete with evidence of her poor work. E.g. Def. Exs. 10, 11, 13-16, 18, 20, 23, 26-30, 32, 37. Plaintiff's own evidence contradicts her assertion that her work was acceptable or that Scholl did not try to help plaintiff to improve her performance. Nix's affidavit states that another coworker complained to her about plaintiff's telephone communication skills and memory. Nix Affd't ¶ 35. Nix also states that plaintiff had trouble learning through oral instruction in the way Scholl tried to train her. Id. ¶ 10.

Likewise, plaintiff's argument that Scholl had a reputation of being biased against black females is spurious. The evidence presented by plaintiff to show that Scholl has a reputation of being biased is bare speculation supported only by second-hand rumor and innuendo. Batson v. Powell, 912 F. Supp. 565, 578. Over his 40-year career at the SEC, Scholl has hired and promoted African-American females. Reid Affd't ¶ 18; Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute ¶ 6. Every one of the paralegal assistants hired by him after the positions were created in 2000 was an African-American female. Def. Ex. 2. Two of three were promoted with the exception being plaintiff. Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute ¶ 7. He has hired African-American females to be

supervisors, such as Valerie Lewis, plaintiff's supervisor beginning in November 2005, and Brenda Nesbitt. Reid Affd't ¶ 18; De. Ex. 34.

Plaintiff's argument that three other African-American females either transferred out of the EDGAR Office or left the SEC does not give rise to an inference of discrimination because there is no evidence to show that their transfer or resignation was the result of discrimination.[4] Opposition at 39-41. Regardless, reputation evidence cannot be used to prove liability for discrimination. E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263 (11th Cir. 2000) ("In the <u>intentional</u> discrimination context, cases have considered reputation evidence [only where] <u>intentional</u> discrimination either has been conceded or proven . . ."(emphasis in original)); see also Lutkewitte v. Gonzales, 436 F.3d 248, 271 n. 13 (C.A.D.C. 2006) (concurring opinion) ("knowledge of . . . general reputation for treating female employees differently cannot act as a substitute for a tangible employment action.").

Thus, plaintiff has failed to show that the SEC's reason for plaintiff's removal was pretext for discrimination.[5]

**II.     Retaliation**

Plaintiff's Opposition fails to point to competent evidence of a causal connection between her protected activity and any action by the SEC. Plaintiff maintains that the SEC's actions against her were in reprisal for her threat to sue Scholl in March 2002 and her statements to

---

[4] Affidavits from the plaintiff, Katie Nix, and Karline Reid do not articulate any facts that show the employees were discriminated against.

[5] Plaintiff's Opposition attempts to make a distinction between those African-American females with degrees and those without. See Opposition at 39-41; Reid Affd't ¶ 17; Nix Affd't ¶¶ 28-33. However, there is no cause of action under Title VII based on education.

Scholl in August 2002 when she first alleged disparate treatment. Those actions are approximately two years before the earliest of the actions at issue here.

Plaintiff's performance at the Grade 7 level was not determined to be unacceptable until June of 2004. Def. Ex. 31. After August 2002, plaintiff did not again complain of discrimination until after her removal in February 2005, and after Scholl had responded to the D.C. Superior Court's questions in October 2004. Def. Exs. 37, 38, 42. Thus, plaintiff has not satisfied the causal connection requirement. See Forman v. Small, 271 F.3d 285, 301 (D.C. Cir. 2001) (plaintiff cannot rely on timing of events to show causation where there is a long time lapse between the adverse action and the protected activity); see also Maramark v. Spellings, 2006 WL 276979 (D.D.C.).

Furthermore, nothing plaintiff has proffered supports her argument that Scholl's conversation with the D.C. Superior Court was motivated by discrimination. The only documented evidence of any conversation between the SEC and plaintiff's prospective employers is Scholl's testimony, read in conjunction with his contemporaneous note. Def. Exs. 3 at 238-48, 4 at 48-52, and Def. Ex. 38. Taken together, the only conclusion one can reach is that Scholl was truthful and was not motivated in any way by discrimination. Plaintiff has presented no evidence to the contrary other than her speculation that Scholl was retaliating against her.

In any event, plaintiff has failed to present evidence to show that negative job references were the reason she was not hired by the D.C. Superior Court or Home Depot. Plaintiff has not provided any admissible evidence from anyone at the D.C. Superior Court or Home Depot explaining why she was not hired. Indeed, with respect to Home Depot she does not have competent evidence that Mr. Scholl or anyone else from the EDGAR Office even provided a

9

reference. Opposition at 28. Yet in both cases, she maintains that she failed to get the jobs because of Scholl's negative references. Because plaintiff's claim is pure speculation, entirely unsupported by any competent evidence, it cannot support her allegation of reprisal. See <u>McGill v. Munoz</u>, 203 F.3d 843, 846 (D.C. Cir. 2000)

## CONCLUSION

For the foregoing reasons, and those set forth in its Motion for Summary Judgment, defendant's motion should be granted and this matter should be dismissed.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

Of Counsel:          DAVID M. PINANSKY, Esq.
                     Senior Special Counsel
                     U.S. Securities and Exchange Commission
                     100 F Street, N.E., Mail Stop 9612
                     Washington, D.C. 20549

Tel:   (202) 551-5191
Fax:   (202) 772-9263