## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ESTHER GRACE SIMMONS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1828 (RCL)** |
| | ) | |
| **CHRISTOPHER COX,** | ) | |
| **as and in his capacity as** | ) | |
| **CHAIRMAN OF THE SECURITIES** | ) | |
| **AND EXCHANGE COMMISSION** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on defendant's Motion [23] for Summary Judgment. Defendant seeks summary judgment on plaintiff's race and gender discrimination claims and plaintiff's retaliation claim which were brought under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e-16, 2000e-3(a) (2006). Having considered defendant's motion [26], plaintiff's opposition [31], defendant's reply [33], the entire record herein, and the applicable law, the Court grants defendant's Motion [23] for Summary Judgment.

## I. BACKGROUND

### A. Plaintiff's Employment at the SEC

Plaintiff, an African-American woman, was hired by defendant Securities and Exchange Commission ("SEC ") as a GS-4 Clerk Typist in 1988. (Compl. ¶ 6.) Plaintiff excelled in her work and received several promotions. (*Id.* ¶¶ 8, 9, 11.) By the spring of 1997, plaintiff was a GS-7 Securities Compliance Technician in the Office of Compliance Inspections and

Examinations.  (*Id.* ¶ 11.)  Then, in 2000, she applied to be a GS-9 paralegal specialist in the Division of Corporation Finance.  (Def.'s Mot. Summ. J. Ex.2 ¶ 7.)

The GS-9 paralegal specialist position for which Plaintiff applied was newly created, and the SEC advertised several openings.  (Def.'s Mot. Summ. J. Ex. 2 ¶ 4.)  Herbert Scholl ("Scholl") selected plaintiff to fill one of these vacancies.  (Pl.'s Opp'n Ex. 44.)  At the same time, he filled the two remaining vacancies with Karlene Reid and Cynthia Brooks, who are also African-American females.  (Def.'s Mot. Summ. J. Ex. 6 at 13.)  Scholl became the first line supervisor for all three paralegal specialists.  (Def.'s Mot. Summ. J. Ex. 3 at 104-05.)

Plaintiff's primary task as a paralegal specialist was to process Freedom of Information Act ("FOIA") requests.  (Pl.'s Opp'n Ex. 3 at 3.)  In addition, plaintiff processed confidential treatment requests ("CTRs").  (*Id.*)  For both tasks, plaintiff had to submit her work for review by a senior staff member in the office.  (Pl.'s Opp'n at 5; Def.'s Mot. Summ. J. Ex. 3 at 121.)  Richard Landy ("Landy") reviewed plaintiff's FOIA requests and Jacob Fein-Helfman ("Fein-Helfman") reviewed her CTRs.  (Compl. ¶ 20.)  Later, during plaintiff's two performance improvement plans, Scholl became the primary reviewer of plaintiff's work.  (*See* Def. Mot. Summ. J. Ex. 8 at 138.)

Plaintiff passed her first performance review as a GS-9 paralegal specialist for the period of August 27, 2000 through April 30, 2001.  (*See* Pl.'s Opp'n at 7; Def.'s Mot. Summ. J. Ex. 12.)  Scholl, however, provided feedback discussing areas in which plaintiff needed to improve.  (Def.'s Mot. Summ. J. Ex. 12 .)  Specifically, Scholl stated that plaintiff's "transition from a clerical to a paralegal position is not complete."  (*Id.*)  To complete the transition, Scholl wrote that plaintiff needed to improver her communication skills, professionalism, and analytical skills

2

pertaining to business and corporate finance.  (*Id.*)

Following plaintiff's first review, plaintiff maintains that she performed at a satisfactory level.  (Pl.'s Opp'n at 10; Compl. ¶ 23.)  However, Landy and Fein-Helfman, the primary reviewers of plaintiff's work, frequently found fault with her work and conveyed this to Scholl.[1] (*See* Def.'s Mot. Summ. J. at Exs. 13-16).  Even when plaintiff received positive feedback, extensive revisions were often necessary.[2]  (*See* Pl.'s Opp'n Ex. 28).  As a result, in July 2002, upon consideration of the feedback of Landy and Fein-Helfman and his own observations, Scholl failed plaintiff for her performance period from March 2001 to April 2002.  (Def.'s Mot. Summ. J. Ex. 17.)  Specifically, Scholl failed plaintiff in three critical areas of her review: technical proficiency, analytical ability, and communication skills.  (*Id.*)  To improve plaintiff's performance,  Scholl  placed plaintiff on her first performance improvement plan ("PIP I"). (Def.'s Mot. Summ. J. Ex. 10.)  Plaintiff had ninety days to improver her performance in the three areas in which she failed.  (*Id.*)

Prior to her failed evaluation, however, plaintiff had her first confrontation with Scholl after she corrected an error which Scholl made on a CTR.  (Pl.'s Opp'n Ex. 2 ¶ 7.)  Plaintiff's professional relationship with Scholl then began to deteriorate, and in the summer of 2002, plaintiff told Scholl that if he did not treat her better, she would take him to court for his

---

[1] In one correspondence between Landy and Scholl dated February 4, 2002, Landy wrote that "you [Scholl] said [plaintiff] is doing a good job on FOIAs.  I am her reviewer and I disagree: Grace's FOIA search and memo writing skill have not developed beyond the most basic level of FOIA work, her FOIA memos are frequently unsatisfactory, and I cannot rely on her judgment."  (Def.'s Mot. Summ. J. Ex. 14.)

[2] On one memo dated July 9, 2002, Landy did comment "Very good catch Grace!"  The letter, however, contains extensive revisions.  (*See* Pl.'s Opp'n Ex. 28.)

disparate treatment of her as an African-American woman with a college degree.  (*Id.* at 13-14; Def.'s Mot. Summ. J. Ex. 3 at 145-47.)  Plaintiff, however, did not file a formal complaint alleging discrimination until March 4, 2005.  (Def.'s Mot. Summ. J. Ex. 42.)

During her PIP I, plaintiff alleges that she performed satisfactorily.  (Compl. ¶ 38.)  Scholl was plaintiff's primary reviewer, and he disagreed.  (Def.'s Mot. Summ. J. Ex 8 at 138.)  After reviewing her work, he did not think that she improved her performance to a satisfactory level.  (Def.'s Mot Summ. J. Ex. 2 ¶ 19.)  Consequently, Scholl failed plaintiff for her PIP I period and proposed that plaintiff should be demoted from a paralegal specialist, SK-9, to a paralegal specialist, SK-7.  (Pl.'s Opp'n at 19; Def.'s Mot. Summ. J. Ex. 19.)  Through her union, plaintiff unsuccessfully challenged the demotion, but she did not allege that Scholl discriminated against her.  (Pl.'s Opp'n at 20; Def.'s Mot. Summ. J. Exs. 20, 21.)

Following plaintiff's demotion, her supervisors adjusted her workload and assigned her tasks more suitable for her current level.  (Def.'s Mot. Summ J. Ex. 4 at 11-12.)  Plaintiff maintains that she performed this work at an adequate level.  (Compl. ¶¶ 46, 53.)  Her supervisors, however, thought that she still had difficulty performing her work at an acceptable level.  (*See* Def.'s Mot. Summ. J. Exs. 26-30.)  As a result, Scholl  rated her performance unacceptable and placed plaintiff on her second performance improvement plan ("PIP II") on June 24, 2004.  (Def.'s Mot. Summ. J. Ex. 31; Def.'s Mot. Summ. J. Ex. 11.)  Plaintiff had sixty days to improve her performance in the areas of knowledge of her field, execution of duties, and communications.  (Def.'s Mot. Summ. J. Ex. 11.)  Moreover, PIP II provided plaintiff with detailed procedures for how to improve performance.  (*See id.* at 5.)

During PIP II, plaintiff contends that she continued to work at an adequate level.  (Pl's

4

Opp'n at 24; Def.'s Mot. Summ. J. Ex. 36 ¶¶ 38, 39.)  Scholl, however, did not see improvement

in plaintiff's work.  (Def.'s Mot. Summ. J. Ex. 32.)  He found plaintiff's performance

unacceptable, and on November 1, 2004, he recommended her removal from the SEC.  (*Id.*)   In

the proposed removal, he provided thirteen separate items demonstrating plaintiff's failure to

improve her performance.  (*Id.*)  Plaintiff responded in writing with over thirty exhibits to refute

Scholl's claims of her unacceptable performance.  (Pl.'s Opp'n at 26; Def.'s Mot. Summ. J. Ex.

36.)  After carefully reviewing both parties' evidence, Alan Beller, the deciding official, found

that nine of the thirteen causes of dismissal supported plaintiff's removal for unsuccessful

performance.  (Def.'s Mot. Summ. J. Ex. 37.)  On February 11, 2005, plaintiff was officially

removed from the SEC.  (Compl ¶ 70.)

    Following her termination, plaintiff contacted the SEC's Equal Employment Office

("EEO") for the first time.  (Def.'s Mot. Summ. J. Ex. 42.)  On April 6, 2005, she filed her

formal complaint alleging race and sex discrimination and retaliation.  (Def.'s Mot. Summ. J. Ex.

43.)  The office then contacted Scholl for the first time regarding plaintiff's complaint in 2005.

(Def.'s Mot. Summ. J. Ex. 4 at 9.)  In August 2005, a final agency decision was issued regarding

plaintiff's EEO complaint.  (Def.'s Mot. Summ. J. Ex. 6.)  The decision found that the SEC's

reasons for removing plaintiff were not a pretext for discrimination or retaliation.  (*Id.*)

## B.  Job References

    Prior to plaintiff's proposed removal, she applied for a job with the District of Columbia

Superior Court.  (Compl. ¶ 54.)  After plaintiff's first interview, Cheryl Dixon, a representative

from the D.C. Superior Court, contacted Scholl for a reference.  (Def.'s Mot. Summ J. Ex. 3 at

239.)  Scholl was asked to rate plaintiff from one to ten in several areas.  (*Id.* at 241.)  He

responded by rating her quality of work and ability to adapt to change as 2's or 3's on the scale,

and he rated the remaining categories between 6 and 7.  (*Id.* at 241-43; Def.'s Mot. Summ. J. Ex.

38.)  The D.C. Superior Court also contacted Valerie Lewis, plaintiff's supervisor from

November 1, 2004 until February 11, 2005, for a recommendation in which she responded that

plaintiff worked at a satisfactory level.  (Def.'s Mot. Summ. J. Ex. 35 at 35.)  Plaintiff

subsequently had two more interviews with the D.C. Superior Court before ultimately failing to

obtain the job.  (Compl. ¶ 54.)

Moreover, after plaintiff's removal, she applied for a position at Home Depot.  (*Id.* ¶ 71.)

Plaintiff believes that she did not obtain that job because Scholl provided Home Depot with a

poor and inaccurate reference.  (*Id.*; Def.'s Mot. Summ. J. Ex. 7 at 63.)  Scholl, however, never

spoke to any representative from Home Depot or any other perspective employer.  (Def.'s Mot.

Summ. J. Ex. 3 at 246.)

## II.  Legal Standard

### A.  Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admission on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  In summary judgment proceedings, the moving party has the

burden of demonstrating that there is an "absence of a genuine issue of material fact" in dispute.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party's evidence offered in

opposition is to be believed and all reasonable inferences are to be drawn in the nonmoving

party's favor.  *See  Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).  "[T]he mere

existence of *some* alleged factual dispute" alone, however, does not defeat a motion for summary judgment. *Id.* at 247. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

### B. Title VII Discrimination and Retaliation Claims

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee on the basis of race or gender and from retaliating against an employee who reports a practice which her or she believes is discriminatory. 42 U.S.C. §§ 2000e-16, 2000e-3(a). Absent direct evidence of discrimination or retaliation, Title VII discrimination and retaliation claims are analyzed under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). The *McDonnell Douglas* standard requires that a plaintiff must first establish a *prima facie* case of discrimination or retaliation. *Id.* at 802; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the defendant's challenged action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant provides a legitimate and nondiscriminatory reason for the challenged action, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext for discrimination. *Id.* at 804.

### III. ANALYSIS

### A. Race and Gender Discrimination Claims

### 1. *Prima Facie* Case

To establish a *prima facie* case for discrimination, plaintiff must show (1) that she is a member of a protected group; (2) that she suffered an adverse employment action; and (3) that

the adverse action which she suffered gives rise to an inference of discrimination. *See Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). Plaintiff satisfies the first two elements of the *prima facie* case without question. She is an African American woman who was removed from her position at the SEC. Plaintiff has two alternatives to satisfy the third element of the *prima facie* case. She can either "demonstrat[e] that she was treated differently from similarly situated employees who are not part of the protected class," or show that her removal "was not attributable to the two . . . common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005.)

Plaintiff is not able to identify any similarly situated persons who are not in her protected class. The only two other paralegal specialists in her office were African-American females who were hired at the same time as the plaintiff and remain employed by the SEC. (Def.'s Mot. Summ. J. Ex. 6 at 13.) Plaintiff, however, disputes that her work product was below the legitimate expectations of the SEC. (Compl. ¶¶ 23, 38, 46, 53, 60.) In support of her argument, plaintiff provides several exhibits which commend her for her work. (*See* Pl's Opp'n Exs. 28, 62.) This dispute concerning the quality of plaintiff's work gives rise to an inference of discrimination. Accordingly, the Court finds that plaintiff has established a *prima facie* case for discrimination.

### 2. Legitimate Nondiscriminatory Reasons for Plaintiff's Removal

Having established a *prima facie* case, the burden is now on the defendant to produce legitimate non-discriminatory reasons for removing the plaintiff from her position. *See McDonnell Douglas Corp.,* 411 U.S. at 802. The defendant's burden is merely one of

8

production.  *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 854 (D.C. Cir. 2006).  To meet

this burden, the SEC has produced numerous documents detailing the unsatisfactory level of

plaintiff's work which detail the deficiencies in plaintiff's work that led to her removal.  (*See,

e.g.,* Exs. 6, 12-16, 32, 37.)  Accordingly, the Court finds that the SEC produced legitimate

nondiscriminatory reasons for plaintiff's removal and rebutted plaintiff's *prima facie* case of

discrimination.

### 3.  Defendant's Reasons Were Not Pretextual

Once the defendant produces a legitimate nondiscriminatory reason for the plaintiff's

removal, the burden returns to the plaintiff to demonstrate that those reasons are pretext for

discrimination.  *See Reeves v. Sanderson Plumbing Prods. Inc*., 530 U.S. 133, 143 (2000).  For a

proffered reason to be a pretext for discrimination, it is essential that the reason is false and that

discrimination is the real reason.  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515

(1993).  To demonstrate that the proffered reason is pretext, the plaintiff must demonstrate that

"a reasonable jury could conclude from all of the evidence that the adverse employment decision

was made for a discriminatory reason."  *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003.)

 All of the evidence includes: "(1) evidence establishing the plaintiff's *prima facie* case; (2)

evidence the plaintiff presents to attack the employer's proffered explanation of its action; and

(3) any further evidence of discrimination that may be available to the plaintiff, such as

independent evidence of discriminatory statements or attitudes on the part of the employer."

*Holcomb* 433 F.3d at 897.  A plaintiff's personal claims about the quality of his or her work,

however, are conclusory and will not create a genuine issue of material fact to preclude summary

judgment at this stage.  *See Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999) (stating that

conclusory statements are not accepted as true in summary judgment proceedings); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993) (explaining that a plaintiff must support her allegations of the quality of her work with facts on the record).

Plaintiff's *prima facie* case and the evidence plaintiff presented to attack the SEC's proffered explanation for her termination both concern the quality of plaintiff's work. The SEC has documented in detail the unsatisfactory quality of plaintiff's work which led to her ultimate removal. (*See, e.g.,* Def.'s Mot. Summ. J. Exs. 6, 12-16, 32, 37.) In response to the SEC's evaluations of her work, plaintiff relies primarily on her own opinion that her work did not decline during her course of employment as a paralegal specialist. (*See,* Compl. ¶ 23, 38, 46, 53, 60; Def.'s Mot. Summ. J. Ex. 36.) Plaintiff's self-assessment of her work, however, is conclusory and cannot establish a pretext of discrimination. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 5 (D.D.C. 2000) (explaining that plaintiff's self-assessment of her work, without factual support, cannot create a genuine issue of material fact regarding an employer's reason for terminating the plaintiff). Furthermore, the record demonstrates that plaintiff's work needed to improve in order to complete her transition from a clerk to a paralegal specialist and perform at a satisfactory level. (Def.'s Mot. Summ. J. Ex. 12.) Her failure to improve her work performance resulted in her unacceptable ratings and, ultimately, her removal from the SEC. (Def.'s Mot. Summ. J. Ex. 37.) Moreover, plaintiff failed to provide any evidence that the other paralegal specialists made the same errors as she without suffering the same repercussions.

In addition to her self-assessment of her work, plaintiff relies on positive feedback that she received on several memos in 2002 and on her co-workers' assessment of her work to

demonstrate that she performed her work at a satisfactory level. (See Pl.'s Opp'n Exs. 6, 11, 28, 63.) The Court finds these arguments unpersuasive. The positive comments which plaintiff received occurred well before her second PIP and do not demonstrate that the quality of her work in 2004 was satisfactory. Moreover, the memo dated July 9, 2002 contained major revisions along with positive feedback. (*See* Pl.'s Opp'n Ex. 28.) In addition, plaintiff's co-workers cannot accurately assess the quality of plaintiff's work because they did not supervise plaintiff. *See Waterhouse*, 124 F. Supp. 2d at 6 (declaring that "it is the perception of her [supervisor] which is relevant" to determine the quality of plaintiff's work) (internal citations omitted). Therefore, their assessment is not relevant in the determination of the quality of plaintiff's work.

Plaintiff argues that the statements and letter of recommendation provided by Valerie Lewis concerning the quality of plaintiff's work create a genuine issue of material fact as to whether plaintiff worked at a satisfactory level. (Def.'s Mot. Summ. J. Ex. 35 at, 20, 22; Pl.'s Opp'n Ex. 53.) However, Lewis did not supervise plaintiff during all, or even part, of her PIP II period. In fact, Lewis did not supervise plaintiff until after the SEC has proposed to remove plaintiff from her position. (Def.'s Mot. Summ. J. Ex. 41 ¶ 4.) The SEC proposed to remove plaintiff because of her poor performance during and prior to her second PIP. (Def.'s Mot. Summ. J. Ex. 37.) Thus, Lewis' view of plaintiff's work does not illustrate that plaintiff's work was satisfactory either during or prior to plaintiff's PIP II.

Furthermore, plaintiff contends that Scholl demonstrated a pattern of discrimination against African-American women. In support of this argument, plaintiff demonstrates that three other African-American women either transferred or resigned from plaintiff's office. (Comp. ¶¶ 27, 28; Pl.'s Opp'n Ex. 11 ¶ 17.) The record, however, does not show that the women left

11

because of discrimination. Moreover, Scholl had a history of hiring and promoting African-American females.[3]

Therefore, the Court finds that there is no genuine issue as to any material fact that the SEC's proffered reasons for plaintiff's termination were pretext for discrimination. Accordingly, the Court grants defendant's motion [23] for summary judgment with respect to plaintiff's race and gender discrimination claims.

## B. Retaliation Claims

In addition to plaintiff's race and gender discrimination claims, plaintiff asserts that the SEC retaliated against her by terminating her and providing poor references as a result of her EEO protected activity. The analysis of Title VII retaliation claims requires a court to conduct the same burden-shifting analysis as race and gender discrimination claims. *See Holcomb,* 433 F.3d at 901. "To establish a *prima facie* case of retaliation, the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights." *Id.* at 901-02. The Court finds that plaintiff has failed to established a *prima facie* case of retaliation claim and that the SEC is entitled to summary judgment on plaintiff's retaliation claims.

Plaintiff is unable to establish that she engaged in an EEO protected activity to establish a *prima facie* case of retaliation prior to her removal. Plaintiff did not contact the EEO until one month after her termination on March 7, 2005. (Def.'s Mot. Summ. J. Ex. 42.) Scholl then

---

[3] In his service at the SEC, Scholl has hired and promoted many African-American females including the two paralegal specialists hired at the same time as plaintiff and Valerie Lewis. (Def.'s Reply at 7-8.)

learned of plaintiff's formal EEO activity, but only after he proposed plaintiff's removal and provided references to the D.C. Superior Court. (Def.'s Mot. Summ. J. Ex. 4 at 9.)

Plaintiff, however, contends that her EEO protected activity began with her informal complaints to Scholl about his treatment of her.  In 2002, plaintiff informed Scholl that he discriminated against African-American women with college degrees.  (Def.'s Mot. Summ. J. Ex. 3 at 145-147.)  Title VII, however, does not protect employment actions based on education. In addition, the record does not demonstrate that Scholl had any knowledge that plaintiff engaged in any other informal EEO protected activities.  Thus, the Court finds that plaintiff's informal complaints did not constitute protected EEO activity.

Furthermore, plaintiff is unable to establish that the job references provided by Scholl constituted an adverse employment action necessary to establish a *prima facie* case of retaliation. For a negative job reference to constitute an adverse employment action, the plaintiff must demonstrate (1) that disparaging comments were made; (2) the person to whom the comment were made; and (3) that the plaintiff was denied employment because of the negative job reference.  *Niedermeier v. The Office of Max S. Baucus*, 154 F. Supp. 2d 23, 31 (D.D.C. 2001). Plaintiff is unable to establish that the negative job references constituted an adverse employment action.  First, plaintiff cannot identify to whom any disparaging comments were made at Home Depot.  (Def.'s Mot. Summ. J. Ex. 39 at 55-56).  Second, plaintiff cannot establish that she was denied a position at the D.C. Superior Court as a result of a negative job reference.  While the reference Scholl provided to the Superior Court rated plaintiff low in several areas, he also rated her satisfactory in others.  (Def.'s Mot. Summ. J. Ex. 38.)  In addition, the D.C. Superior Court interviewed plaintiff three times for the position and had a received a positive reference from

Lewis.  (Def.'s Mot. Summ. J. Ex. 7 at 47-50.)  Accordingly, the Court finds that plaintiff cannot demonstrate that she was denied employment at either Home Depot or the D.C. Superior Court because of poor references from the SEC.

Even assuming that plaintiff establishes a *prima facie* case of retaliation, the SEC is able to rebut the prima facie retaliations claims by offering legitimate nondiscriminatory reasons for the adverse employment actions.  As detailed above, the SEC's removal of plaintiff resulted from the poor quality of her work.  The SEC has produced numerous documents describing plaintiff's unsatisfactory level of work including communication among her supervisors, performance reviews, PIP evaluations, and her notice of termination.  (*See, e.g.,* Def.'s Mot. Summ. J. Exs. 6, 10-16, 37.)  Furthermore, Scholl's reference to the D.C. Superior Court reflected his true opinion of plaintiff's work.  In response to the SEC's legitimate nondiscriminatory reasons, plaintiff has not produced any evidence demonstrating that those reasons are pretext for discrimination.  She has only offered her own personal speculation and belief that the SEC took the adverse employment actions in retaliation.

Plaintiff has not established a *prima facie* case of retaliation for either her termination or her negative job references.  In addition, even if she had established a *prima facie* case, the SEC successfully rebutted the presumption of retaliation, and plaintiff did not demonstrate that the proffered reasons were pretext.  Accordingly, the Court will grant the SEC's motion [23] for summary judgment with respect to plaintiff's retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that defendant SEC's Motion [23] for Summary Judgment shall be GRANTED.

14

A separate Order shall issue this date.

Signed Royce C. Lamberth, United States District Judge, July 12, 2007.